# EXHIBIT A

AMENDED IN ASSEMBLY JUNE 26, 2003

AMENDED IN SENATE MAY 22, 2003

AMENDED IN SENATE MAY 6, 2003

AMENDED IN SENATE MARCH 17, 2003

## SENATE BILL                              No. 186

**Introduced by Senator Murray**
*(Coauthor: Assembly Member Maldonado)*

February 12, 2003

An act to ~~amend Section 17538.4 of, and to~~ add Article 1.8 (commencing with Section 17529) to Chapter 1 of Part 3 of Division 7 ~~of,~~ the Business and Professions Code, relating to privacy.

LEGISLATIVE COUNSEL'S DIGEST

SB 186, as amended, Murray. Privacy: unsolicited e-mail advertising.

Existing law prohibits a person or entity conducting business in the state from e-mailing or causing to be e-mailed documents consisting of unsolicited advertising material for the lease, sale, rental, gift offer, or other disposition of any realty, goods, services, or extension of credit unless that person or entity establishes a toll-free telephone number or valid sender operated return e-mail address that a recipient may contact to notify the sender not to e-mail the recipient any further unsolicited documents. Existing law requires that notification of the toll-free telephone number, and a valid address that a recipient may write to, be included on these unsolicited e-mailed documents, and prohibits the e-mailing of these unsolicited advertising documents to a person who has requested not to receive any further unsolicited documents. Existing

95

law requires certain unsolicited e-mail advertisements to contain a heading of "ADV:" or "ADV:ADLT." A violation of the provisions governing advertising is a misdemeanor.

This bill would prohibit an advertiser located in California from using unsolicited commercial e-mail advertisements. The bill would prohibit an advertiser not located in California from using unsolicited commercial e-mail advertisements sent to a California e-mail address if the advertiser knows or should reasonably know that it is a California e-mail address. The bill would provide that if any part of these provisions or their application is held invalid, the invalidity would not affect the other provisions.

This bill would authorize the recipient of a commercial e-mail advertisement transmitted in violation of these prohibitions, *the electronic mail service provider,* or the Attorney General to bring an action to recover *actual damages and liquidated damages of* $1,000 per ~~individual violation~~ *transmitted message or $1,000,000 per incident, as defined, whichever is less, subject to reduction by a court for specified reasons. The bill would also provide for an award of attorney's fees and costs.* The bill would provide that a cause of action in existence prior to its enactment would be governed by the law in effect at the time it arose. *The bill would enact other related provisions.*

Because a violation of the bill would be a crime, it would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1       SECTION 1.   Article 1.8 (commencing with Section 17529)
2   is added to Chapter 1 of Part 3 of Division 7 of the Business and
3   Professions Code, to read:
4

Article 1.8.    Restrictions On Unsolicited Commercial E-mail
Advertisers

17529.  For  the  purpose  of  this  article,  the  following
definitions apply:

(a)  "Advertiser"  means  a  person  or  entity  that  advertises
through the use of unsolicited commercial e-mail advertisements.

(b)  "California electronic mail address"  or  "California e-mail
address"  means any of the following:

(1)  An e-mail address furnished by an electronic mail service
provider that sends bills for furnishing and maintaining that e-mail
address to a mailing address in this state.

(2)  An e-mail address ordinarily accessed from a computer
located in this state.

(3)  An e-mail address furnished to a resident of this state.

(c)  "Commercial e-mail advertisement"  means any electronic
mail message initiated for the purpose of advertising or promoting
the  lease,  sale,  rental,  gift  offer,  or  other  disposition  of  any
property, goods, services, or extension of credit.

(d)   "Direct consent"  means that the recipient has expressly
consented to receive the message, either in response to a clear and
conspicuous  request  for  the  consent  or  at  the  recipient's  own
initiative.

(e)  "Domain name"  means any alphanumeric designation that
is registered with or assigned by any domain name registrar as part
of an electronic address on the Internet.

(f)  "Electronic  mail"  or  "e-mail"  means  an  electronic
message  that  is  transmitted  between  two  or  more
telecommunications devices, computers, or electronic devices
capable  of  receiving  electronic  messages,  whether  or  not  the
message is converted to hard copy format after receipt or is viewed
upon transmission or stored for later retrieval. "Electronic mail"
or  "e-mail"  includes  electronic  messages  that  are  transmitted
through  a local, regional, or global computer network.

(g)  "Electronic mail address"  or  "e-mail address"  means  a
destination,  commonly  expressed  as  a  string  of  characters,  to
which electronic mail can be sent or delivered. An "electronic mail
address"  or  "e-mail address"  may include a user name or mailbox
and a reference to an Internet domain.

**SB 186** — 4 —

1  (h) *"Incident" means a single transmission of substantially*
2  *similar content.*
3  (i) "Internet" has the meaning set forth in paragraph (6) of
4  subdivision (e) of Section 17538.
5  ~~(i)~~
6  (j) "Preexisting or current business relationship," as used in
7  connection with the sending of a commercial e-mail
8  advertisement, means ~~either of the following:~~
9  ~~(1) That within the three-year period ending upon receipt of the~~
10  ~~advertisement, the recipient has made an inquiry, application,~~
11  ~~purchase, or transaction regarding products or services offered by~~
12  ~~the sender.~~
13  ~~(2) That the recipient has made an inquiry, application,~~
14  ~~purchase, or transaction regarding products or services offered by~~
15  ~~the sender and the sender maintains an electronic or written record~~
16  ~~of the transaction.~~
17  ~~(j)~~ *that the recipient has made an inquiry, application,*
18  *purchase, or transaction regarding products or services offered by*
19  *the sender.*
20  (k) "Recipient" means the addressee of a commercial e-mail
21  advertisement. If an addressee of a commercial e-mail
22  advertisement has one or more e-mail addresses to which a
23  commercial e-mail advertisement is sent, the addressee shall be
24  deemed to be a separate recipient for each e-mail address to which
25  the advertisement is sent.
26  ~~(k)~~
27  (l) "Unsolicited commercial e-mail advertisement" means a
28  commercial e-mail advertisement sent to a recipient who meets
29  both of the following criteria:
30  (1) The recipient has not provided direct consent to receive the
31  commercial e-mail advertisement.
32  (2) The recipient does not have a preexisting or current
33  business relationship, as defined in subdivision ~~(i)~~ *(j)*, with the
34  advertiser of the realty, goods, services, or extension of credit.
35  17529.1.  (a) Notwithstanding any other provision of law, if
36  an advertiser is located in California, the advertiser shall not
37  advertise using an unsolicited commercial e-mail advertisement.
38  (b) Notwithstanding any other provision of law, an advertiser
39  that is not located in California shall not advertise using an
40  unsolicited commercial e-mail advertisement that is sent to a

1 California e-mail address if the advertiser knows or should
2 reasonably foresee that the e-mail address is a California e-mail
3 address.
4    (c)  The provisions of this section are severable. If any provision
5 of this section or its application is held invalid, that invalidity shall
6 not affect any other provision or application that can be given
7 effect without the invalid provision or application.
8    17529.2.   (a)  In addition to any other remedies provided by
9 this article or by other provisions of law, a recipient of an
10 unsolicited commercial e-mail advertisement transmitted in
11 violation of Section 17529.1 *, the electronic mail service provider,*
12 *or the Attorney General* may bring an action to recover ~~one~~
13 ~~thousand dollars ($1,000) for each individual violation of that~~
14 ~~section.~~
15    ~~(b)  In addition to any other remedies provided by this article or~~
16 ~~by other provisions of law, the Attorney General may bring an~~
17 ~~action against a person or entity in violation of Section 17529.1 to~~
18 ~~recover one thousand dollars ($1,000) for each individual~~
19 ~~violation of that section.~~
20    ~~SEC. 2.   Section 17538.4 of the Business and Professions~~
21 ~~Code is amended to read:~~
22    ~~17538.4.   (a)  A person or entity conducting business in this~~
23 ~~state shall not electronically mail (e-mail) or cause to be e-mailed~~
24 ~~documents containing unsolicited advertising material for the~~
25 ~~lease, sale, rental, gift offer, or other disposition of any realty,~~
26 ~~goods, services, or extension of credit unless that person or entity~~
27 ~~establishes a toll-free telephone number or valid sender operated~~
28 ~~return e-mail address that the recipient of the unsolicited~~
29 ~~documents may call or e-mail to notify the sender not to e-mail any~~
30 ~~further unsolicited documents.~~
31    ~~(b)  An unsolicited e-mailed document subject to this section~~
32 ~~shall include a statement informing the recipient of the toll-free~~
33 ~~telephone number that the recipient may call, or a valid return~~
34 ~~address to which the recipient may write or e-mail, as the case may~~
35 ~~be, notifying the sender not to e-mail the recipient any further~~
36 ~~unsolicited documents to the e-mail address, or addresses,~~
37 ~~specified by the recipient.~~
38    ~~The statement shall be the first text in the body of the message~~
39 ~~and shall be of the same size as the majority of the text of the~~
40 ~~message.~~

SB 186 — 6 —

1  (c)  Upon notification by a recipient of his or her request not to
2  receive any further unsolicited e-mailed documents, a person or
3  entity conducting business in this state shall not e-mail or cause to
4  be e-mailed any unsolicited documents to that recipient.
5  (d)  This section shall apply when the unsolicited e-mailed
6  documents are delivered to a California resident via an electronic
7  mail service provider's service or equipment located in this state.
8  For these purposes, "electronic mail service provider" means a
9  business or organization qualified to do business in this state that
10  provides individuals, corporations, or other entities the ability to
11  send or receive electronic mail through equipment located in this
12  state and that is an intermediary in sending or receiving electronic
13  mail.
14  (e)  As used in this section, "unsolicited e-mailed documents"
15  means an e-mailed document or documents consisting of
16  advertising material for the lease, sale, rental, gift offer, or other
17  disposition of any realty, goods, services, or extension of credit
18  that meet both of the following requirements:
19  (1)  The documents are addressed to a recipient with whom the
20  initiator does not have an existing business or personal
21  relationship.
22  (2)  The documents are not sent at the request of, or with the
23  express consent of, the recipient.
24  (f)  As used in this section, "e-mail" or "cause to be e-mailed"
25  does not include or refer to the transmission of any documents by
26  a telecommunications utility or Internet service provider to the
27  extent that the telecommunications utility or Internet service
28  provider merely carries that transmission over its network.
29  (g)  In the case of e-mail that consists of unsolicited advertising
30  material for the lease, sale, rental, gift offer, or other disposition
31  of any realty, goods, services, or extension of credit, the subject
32  line of each and every message shall include "ADV:" as the first
33  four characters. If these messages contain information that
34  consists of unsolicited advertising material for the lease, sale,
35  rental, gift offer, or other disposition of any realty, goods, services,
36  or extension of credit that may only be viewed, purchased, rented,
37  leased, or held in possession by an individual 18 years of age and
38  older, the subject line of each and every message shall include
39  "ADV:ADLT" as the first eight characters.

1    (h) ~~An employer who is the registered owner of more than one~~
2 ~~e-mail address may notify the person or entity conducting business~~
3 ~~in this state e-mailing or causing to be e-mailed documents~~
4 ~~consisting of unsolicited advertising material for the lease, sale,~~
5 ~~rental, gift offer, or other disposition of any realty, goods, services,~~
6 ~~or extension of credit of the desire to cease e-mailing on behalf of~~
7 ~~all of the employees who may use employer-provided and~~
8 ~~employer-controlled e-mail addresses.~~
9    (i) ~~This section shall not apply to an advertiser subject to~~
10 ~~Article 1.8 (commencing with Section 17529) of this chapter.~~
11    (j) ~~This section, or any part of this section, shall become~~
12 ~~inoperative on and after the date that federal law is enacted that~~
13 ~~prohibits or otherwise regulates the transmission of unsolicited~~
14 ~~advertising by electronic mail (e-mail).~~
15   ~~SEC. 3.~~ , *in addition to actual damages, liquidated damages*
16 *of one thousand dollars ($1,000) for each unsolicited commercial*
17 *e-mail advertisement transmitted in violation of this article, or one*
18 *million dollars ($1,000,000) per incident, whichever is less. The*
19 *recipient, electronic mail service provider, or Attorney General, if*
20 *the prevailing party, may also recover attorney's fees and costs.*
21 *However, there shall not be a cause of action against an electronic*
22 *mail service provider that transmits the unsolicited commercial*
23 *e-mail advertisement over its computer network.*
24    *(b) If the court finds that the defendant established and*
25 *implemented, with due care, practices and procedures reasonably*
26 *designed to effectively prevent unsolicited commercial e-mail*
27 *advertisements that are in violation of this article, the court shall*
28 *reduce the liquidated damages recoverable under subdivision (a)*
29 *to one hundred dollars ($100) for each unsolicited commercial*
30 *e-mail advertisement, or one hundred thousand dollars*
31 *($100,000) per incident, whichever is less.*
32    *(c) At the request of any party to an action brought pursuant to*
33 *this article, the court, in its discretion, may conduct all legal*
34 *proceedings in a manner as to protect the secrecy and security of*
35 *the computer, computer network, computer data, computer*
36 *program, and computer software involved in order to prevent*
37 *possible reoccurrence of the same or similar act by another person*
38 *and to protect the trade secrets of any party.*
39    *17229.3. Nothing in this article shall be construed to have any*
40 *effect on the lawfulness or unlawfulness, under any other provision*

SB 186                        — 8 —

1  *of law, of the adoption, implementation, or enforcement by a*
2  *provider of Internet access service of a policy of declining to*
3  *transmit, route, relay, handle, or store certain types of electronic*
4  *mail messages.*
5      *SEC. 2.*   A cause of action that is in existence before the
6  effective date of this act shall not be affected by this act, but shall
7  instead be governed by the law that was in effect at the time the
8  cause of action arose.
9      ~~SEC. 4.~~
10     *SEC. 3.*   No reimbursement is required by this act pursuant to
11 Section 6 of Article XIII B of the California Constitution because
12 the only costs that may be incurred by a local agency or school
13 district will be incurred because this act creates a new crime or
14 infraction, eliminates a crime or infraction, or changes the penalty
15 for a crime or infraction, within the meaning of Section 17556 of
16 the Government Code, or changes the definition of a crime within
17 the meaning of Section 6 of Article XIII B of the California
18 Constitution.

O

**EXHIBIT B**

Case 3:17-cv-04497-MMC   Document 28-1   Filed 09/01/17   Page 11 of 133

```
                                                   SB 186
                                                   Page  1
_____

        Date of Hearing:  June 26, 2003

                     ASSEMBLY COMMITTEE ON JUDICIARY
                       Ellen M. Corbett, Chair
                SB 186 (Murray) - As Amended:  June 26, 2003

         SENATE VOTE  :   24-12

         SUBJECT  :   UNSOLICITED E-MAIL ADVERTISING:  SPAM

         KEY ISSUES  :

        1)SHOULD CALIFORNIA BUSINESSES BE PROHIBITED FROM ADVERTISING TO
          IN-STATE OR OUT-OF-STATE CONSUMERS USING UNSOLICITED
          COMMERCIAL E-MAIL ADVERTISEMENTS?

        2)SHOULD BOTH IN-STATE AND OUT-OF-STATE BUSINESSES BE PROHIBITED
          FROM ADVERTISING TO CALIFORNIA CONSUMERS USING UNSOLICITED
          COMMERCIAL E-MAIL ADVERTISEMENTS?

        3)HOW BROADLY SHOULD THE PROHIBITION ON UNSOLICITED E-MAIL
          ADVERTISEMENTS APPLY?

        4)SHOULD THERE BE A CAP ON THE LIQUIDATED DAMAGES AVAILABLE FOR
          VIOLATIONS OF THE PROPOSED PROHIBITION ON UNSOLICITED E-MAIL
          ADVERTISEMENTS?

                             SYNOPSIS

        This bill is intended to address a problem familiar to all
        computer users:  unsolicited e-mail advertisements, commonly
        known as spam.  The bill prohibits all unsolicited commercial
        e-mail advertisements, as defined, from California businesses or
        to California e-mail addresses, except that as to advertisements
        to consumers who have expressly consented to receive the
        message, or to consumers who have had any previous relationship
        with the advertiser, are not prohibited.  The bill permits a
        consumer, an e-mail service provider, or the Attorney General to
        bring suit based on a violation of the prohibition, and to seek
        liquidated damages of one thousand dollars for each
        advertisement sent in violation of the prohibition, up to one
        million dollars per incident (defined as a single transmission),
        with lower liquidated damages where the defendant followed
        certain practices.
```

```
                                                   SB 186
                                                   Page  2
_____

        SB 186 is similar to another bill currently pending in the
```

Assembly Business and Professions Committee, SB 12 (Bowen),
which is referred to this Committee after Business and
Professions.  The prohibitions in SB 186 apply more narrowly
than those in SB 12.  For example, SB 186 applies only to
advertisers, the businesses whose products are advertised in
unsolicited commercial e-mail advertisements.  SB 12 applies
more broadly to prohibit anyone from sending such an
advertisement - creating liability on the part of a sender who
sends such e-mail advertising another entity's products or
services.  SB 186 only bars advertisements by out-of-state
senders if the sender knew or should have reasonably foreseen
that the ad was being sent to a California e-mail address; SB 12
prohibits the sending of an unsolicited ad to a California
e-mail address whether or not the sender knew it was a
California e-mail address.  In addition, SB 12 does not cap the
total amount recoverable per incident but allows recovery based
on the number of advertisements transmitted.

The analysis suggests an amendment to clarify that there may be
a cause of action against an
e-mail service provider if the provider is the sender of
unsolicited commercial e-mail advertisements and other
amendments to clarify some of the definitions used in the bill.


Because this bill is scheduled to be heard by the Business and
Professions Committee on July 1, any amendments taken will be
formally adopted in that committee, pursuant to an agreement.

 SUMMARY  :  Creates new restrictions on unsolicited e-mail
advertisements.  Specifically,  this bill  :

1)Defines various terms used in the bill, including the
  following:

i)  "Advertiser" means a person or entity that advertises
  through the use of unsolicited e-mail advertisements.

ii)  "California electronic mail address" or "California e-mail
  address" means an e-mail address furnished by an electronic
  mail service provider that sends bills for furnishing and
  maintaining that e-mail address to a mailing address in this
  state, or an e-mail address ordinarily accessed from a
  computer in this state, or an e-mail address furnished to a

SB 186
Page  3

  resident of this state.

iii)  "Commercial e-mail advertisement" means any electronic
  mail message initiated for the purpose of advertising or
  promoting the lease, sale, rental, gift offer, or other
  disposition of any property, goods, services, or extension of
  credit.

iv)  "Incident" means a single transmission of substantially
  similar content.

v)   "Preexisting or current business relationship" as used in connection with the sending of a commercial e-mail advertisement means that the recipient has made an inquiry, application, purchase, or transaction regarding products or services offered by the sender.

vi)  "Unsolicited commercial e-mail advertisement" means a commercial e-mail advertisement sent to a recipient who has not provided direct consent to receive the commercial e-mail advertisement and who does not have a preexisting or current business relationship with the advertiser of the realty, goods, services, or extension of credit.

2) Prohibits an advertiser located in California from advertising using an unsolicited commercial e-mail advertisement.

3) Prohibits an advertiser that is not located within California from advertising using an unsolicited commercial e-mail advertisement that is sent to a California e-mail address if the advertiser knows or should reasonably foresee that the e-mail address is a California e-mail address.

4) Provides that the provisions of the section barring unsolicited commercial e-mail advertisements are severable.

5) Provides that in addition to any other remedies provided by the newly created provisions or any other provisions of law, the recipient of an unsolicited commercial e-mail advertisement transmitted in violation of the provisions described above, an e-mail service provider, or the Attorney General (AG) may bring an action to recover, in addition to actual damages, liquidated damages of one thousand dollars for each unsolicited commercial e-mail advertisement transmitted in violation of the newly created provisions, or one million

dollars per incident, whichever is less, and may also recover attorney's fees and costs.

6) States that there is no cause of action under (5), above, against an electronic mail service provider that transmits the unsolicited commercial e-mail advertisement over its computer network.

7) Provides that if the court finds that the defendant established and implemented, with due care, practices and procedures designed to effectively prevent unsolicited commercial e-mail advertisements in violation of the newly created provisions, the court shall reduce the liquidated damages recoverable to one hundred dollars for each unsolicited e-mail advertisement or one hundred thousand dollars per incident, whichever is less.

8) Permits the court, at the request of any party to an action brought pursuant to the newly created article, to conduct all

legal proceedings in a manner as to protect the secrecy and
security of the computer, computer network, data, program and
software involved in order to prevent possible reoccurrence of
the same or a similar act and to protect the trade secrets of
any party.

9)Provides that nothing in the newly created article shall be
construed to have any effect on the lawfulness or unlawfulness
under any other provision of law of the adoption,
implementation, or enforcement by a provider of Internet
access service of a policy of declining to transmit, route,
relay, handle, or store certain types of electronic mail
messages.

10)States that a cause of action that is in existence before the
effective date of the bill shall not be affected by it but
shall be governed by the law in effect at the time the cause
of action arose.

 EXISTING LAW  :

1)Prohibits unsolicited advertising by e-mail unless that e-mail
contains either a toll free phone number or return e-mail
address which the recipient can use to notify the sender not
to electronically send any further unsolicited ads.  (Business
and Professions Code section 17538.4 (b).  All further

                                                        SB 186
                                                      Page  5
_____

references are to the Business and Professions Code unless
otherwise noted.)

2)Prohibits sending unsolicited e-mail ads to any recipient who
has notified the sender to stop sending unsolicited e-mails.
(Section 17538.4 (c).)

3)Requires unsolicited e-mail ads to contain a heading of "ADV:"
or "ADV:ADLT," as specified.  (Section 17538.4 (g).)

4)Prohibits the unauthorized use of e-mail networks to send
unsolicited e-mail ads and authorizes any e-mail  service
provider whose policy on unsolicited e-mail ads is violated to
bring a civil action to recover the actual monetary loss
suffered by that  provider  by reason of that violation, or
liquidated damages of $50 for each e-mail message initiated or
delivered, up to a maximum of $25,000 per day, whichever
amount is greater.  (Section 17538.45.)

 FISCAL EFFECT  :  The bill as currently in print is keyed fiscal.

 COMMENTS  :  This bill is intended to address a problem well known
to all e-mail users:  the proliferation of unsolicited e-mail
advertisements, or spam.  The author states:

    This bill will get at the real solution to unsolicited
    e-mails by allowing people to sue the advertisers of
    unsolicited e-mails.  SB 186 seeks to get to the heart of

the matter by penalizing the actual advertiser of the spam
e-mails. ? We need to go after the companies that are
profiting by these e-mails and allow recipients to hold the
advertisers financially responsible.

SB 186 prohibits a California advertiser from sending
unsolicited e-mail advertisements, and prohibits any advertiser
from sending unsolicited commercial e-mail advertisements to a
California e-mail address, as defined, if the advertiser knows
or should reasonably foresee that the e-mail address is a
California e-mail address.  The bill creates a cause of action
for the consumer, the e-mail service provider, or the AG, to sue
for violation of the prohibition.  In addition to actual damages
(likely to be small in many such suits) the bill permits the
plaintiff to seek liquidated damages of one thousand dollars per
advertisement, up to one million dollars per incident, defined
as a single transmission of substantially similar content.  Thus

                                                    SB 186
                                                    Page  6

the liquidated damages in a case involving transmission of a
single advertisement to many thousands of consumers would be
capped at one million dollars.  Where a defendant could show
that it implemented practices designed to effectively prevent
unsolicited commercial e-mail advertisements, the liquidated
damages available would be one hundred dollars per
advertisement, capped at one hundred thousand dollars per
incident.

 Comparison with SB 12  :  SB 186 is similar to some of the
provisions contained in SB 12 (Bowen), currently pending in the
Assembly Business and Professions Committee.  (In addition to
the provisions paralleling those of SB 186, SB 12 contains other
provisions beyond the scope of SB 186.  Those provisions
address, among other things, e-mail advertisements with
misleading or falsified header information, e-mail
advertisements that contain a third party's domain name used
without permission, and the collection of or automatic
generation of e-mail addresses in order to send unsolicited
commercial e-mail advertisements.)  SB 186 is narrower than SB
12 as to what is prohibited, in several ways.

 What action is prohibited  ?  SB 186 prohibits advertisers - the
entities whose products or services are advertised in the e-mail
- from advertising using unsolicited commercial e-mail
advertisements.  SB 12 instead prohibits any entity from
initiating the transmission of an unsolicited commercial e-mail
advertisement, as specified.  Thus under SB 186, there would be
no cause of action against a sender of spam who sent it on
behalf of another company (e.g. Fax.com); only the company
advertising in the spam would be liable.  Under SB 12, the
sender or the advertiser or both could be sued.  The committee
may wish to discuss with the author  amending the bill to
prohibit unsolicited advertisements from both senders and
advertisers.

 What constitutes an unsolicited commercial e-mail advertisement  ?

Both SB 12 and SB 186 exclude from the definition of an unsolicited e-mail advertisement a message that is sent with the direct consent of the recipient, or where the recipient has a preexisting business relationship with the sender. Direct consent has the same definition in both bills: it means that the recipient has expressly consented to receive the message, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative.

SB 186
Page   7

SB 12, however, uses a narrower definition of "preexisting business relationship" than does
SB 186, thus more strictly limiting the circumstances under which a company may send an unsolicited e-mail to someone. Under SB 12, "preexisting business relationship" is defined to mean either of the following: that within the three years ending upon receipt of the advertisement, the recipient has made an inquiry, application, purchase or transaction regarding products or services offered by the sender, or, that the recipient has made an inquiry, application, purchase, or transaction regarding products or services offered by the sender, and the sender maintains a written or electronic record of the inquiry, application, purchase or transaction.

Under SB 186, there is no time requirement or requirement that a record be kept of the inquiry, application, purchase or transaction.  Proponents of the bill argue that this approach protects legitimate businesses who wish to be able to contact their customers without facing burdensome record-keeping requirements.  However, this does create a large exception to the prohibition on unsolicited e-mails under SB 186:  a business that has been contacted once by a consumer with an inquiry would be able to send that consumer unsolicited e-mail advertisements forever.  Moreover, a business sued under the provisions of SB 186 for sending unsolicited e-mails might argue that the e-mails were sent to consumers with whom the business had a preexisting relationship, but that the business had not kept records of the previous contact.  Such a defense might be difficult to counter.

 Requirement of knowledge that the recipient has a California   e-mail address  .  SB 186 prohibits an advertiser located outside of California from sending an unsolicited commercial e-mail if the advertiser knows or should reasonably foresee that the e-mail address is a California e-mail address.  SB 12, by contrast, prohibits the initiation of any unsolicited commercial e-mail advertisement to a California e-mail address - whether or not the sender had some reason to know that the address was in California.

The requirement under SB 186 that the sender must know or should reasonably foresee that the recipient has a California e-mail address is likely to leave many senders of spam beyond the reach of the proposed law.  An out-of-state company with a list of e-mail addresses in most cases would have no way to know which

SB 186
Page 8

of the addresses are California e-mail addresses, as defined.
Therefore, it would be difficult for Californians to sue such
companies - leaving Californians open to a world of spam from
out of state.  The committee may wish to discuss with the author
amending the bill to delete the requirement that the advertiser
knew or should reasonably have foreseen that it was transmitting
to a California e-mail address.

 Damages for violations  .  Both SB 186 and SB 12 create new
remedies for violations of their prohibitions, in addition to
other remedies available under law.  Under SB 12, a recipient of
an unsolicited commercial e-mail advertisement would be able to
recover actual damages or $500 for each individual violation,
whichever is greater, and reasonable costs and attorney's fees.
The court could triple the amount to be recovered where it found
that the violation was willful or knowing.  In addition, a civil
penalty of $250 would be imposed for each individual violation
with the money going to the High Technology Theft Apprehension
and Prosecution Program Trust Fund.

Under SB 186, $1000 in liquidated damages, in addition to actual
damages, would be available for each unsolicited commercial
e-mail advertisement transmitted in violation of the bill's
prohibitions.  SB 186 creates a cap of one million dollars per
incident, defined as a single transmission of substantially
similar content.  Thus where an unsolicited e-mail ad went out
to a million recipients, only one million dollars in liquidated
damages would be available.  (See Author's  Amendments, below,
regarding clarification of this definition.)  Where a court
finds that the defendant implemented practices reasonably
designed to effectively prevent the transmission of unsolicited
e-mail ads, the liquidated damages would be $100 per
advertisement with a cap of $100,000 per incident.  SB 12, by
contrast, would make implementation of such practices an
affirmative defense.

SB 186 permits the recipient, the e-mail service provider, or
the AG to bring suit.

 Protection for trade secrets  .  SB 186 contains a provision
permitting the court to conduct legal proceedings in a manner so
as to protect the secrecy and security of specified information
relating to the computer systems involved, to prevent a
reoccurrence of the violation and to protect the trade secrets
of any party.  It is unclear why this provision is necessary.

SB 186
Page 9

Existing law provides procedures for a court to protect
sensitive information that may be revealed in the course of
litigation.  ( _See_ , _e.g._ , Code of Civil Procedure section 2031
(f), permitting a court to craft a protective order regarding
information obtained through discovery.)   Creating a new
provision for secrecy in one specific type of case puts at risk
the general rule in California law that court proceedings are
public, and denies the public information about this type of
case.   The committee may wish to discuss with the author  the
potential benefits of amending the bill to delete this
paragraph.

 Author's Technical Amendments  .  The author has agreed to take
two technical amendments in the Business and Professions
Committee to clarify the provisions of the bill and to better
focus some of its provisions, as follows:

1.Where the bill states that the recipient, e-mail service
  provider, or AG, if the prevailing party, may recover
  attorney's fees and costs, the author has agreed to amend the
  bill to permit instead an award of attorney's fees and costs
  to a prevailing plaintiff.

2.Where the bill currently states that there shall not be a
  cause of action against an electronic mail service provider
  that transmits the unsolicited ad over its network, the author
  has agreed to amend this instead to provide that there is no
  cause of action under the bill against an electronic mail
  service provider only involved in the routine transmission of
  the advertisement.  The bill will define routine transmission
  as "the transmission, routing, relaying, handling, or storing
  of an electronic mail message through an automatic technical
  process."

               _

_____ REGISTERED SUPPORT / OPPOSITION  :

                Support

_____
                Microsoft Corporation
_____   _
                 Opposition
_____
                None on file

                                                SB 186
_____ Page  10

                 Analysis Prepared by  :   Kathy Sher / JUD. / (916) 319-2334

Case 3:17-cv-04497-MMC   Document 28-1   Filed 09/01/17   Page 19 of 133

**EXHIBIT C**

AMENDED IN ASSEMBLY JUNE 26, 2003

AMENDED IN ASSEMBLY JUNE 10, 2003

AMENDED IN SENATE MAY 13, 2003

AMENDED IN SENATE MARCH 18, 2003

## SENATE BILL                                    No. 12

### Introduced by Senator Bowen
**(Coauthors: Senators Ducheny, Kuehl, Machado, Ortiz, Perata, Romero, Scott, Soto, Torlakson, and Vasconcellos)**
(Coauthors: Assembly Members Chan, Hancock, Jackson, Leno, Leslie, Longville, Nation, Pavley, Vargas, Wolk, and Yee)

December 2, 2002

An act to amend Section 17538.45 of, to add Article 1.8 (commencing with Section 17529) to Chapter 1 of Part 3 of Division 7 of, and to repeal Section 17538.4 of, the Business and Professions Code, relating to advertising.

LEGISLATIVE COUNSEL'S DIGEST

SB 12, as amended, Bowen.   Electronic mail advertising.

Existing law prohibits a person or entity conducting business in the state from e-mailing or causing to be e-mailed documents consisting of unsolicited advertising material for the lease, sale, rental, gift offer, or other disposition of any realty, goods, services, or extension of credit unless that person or entity establishes a toll-free telephone number or valid sender operated return e-mail address that a recipient may contact to notify the sender not to e-mail the recipient any further unsolicited documents. Existing law requires that notification of the toll-free telephone number, and a valid address that a recipient may write to, be

included on all unsolicited e-mailed documents, as specified, and prohibits the e-mailing of any unsolicited documents to a person who has requested not to receive any further unsolicited documents. Existing law requires unsolicited e-mail advertisements to contain a heading of "ADV:" or "ADV:ADLT," as specified.

This bill would delete these provisions and would instead prohibit a person or entity from initiating an unsolicited commercial e-mail advertisement either from California or to a California electronic mail address. The bill would also make it unlawful for a person or entity to collect or use electronic mail addresses or to ~~establish~~ *register for* multiple electronic mail accounts for the purpose of initiating the transmission of unsolicited commercial e-mail advertisements from California or to a California e-mail address.

This bill would prohibit a person from initiating transmission of a commercial e-mail advertisement either from California or to a California e-mail address where the advertisement (1) contains or is accompanied by a 3rd party's domain name without permission, (2) contains or is accompanied by falsified, misrepresented, obscured, or forged header information, or (3) has a misleading subject line.

This bill would authorize the recipient of a commercial e-mail advertisement transmitted in violation of any of these provisions *or the electronic mail service provider* to bring an action to recover the greater of actual damages or $500 per individual violation, *up to a maximum amount of $50,000 per day,* and reasonable costs and attorney's fees. The bill would also impose a civil penalty of $250 for each individual violation, to be paid to the High Technology Theft Apprehension and Prosecution Program Trust Fund. The bill would authorize the court to increase the award to up to triple this amount if the violation was willful or knowing. The bill would provide that any cause of action in existence prior to its enactment would not be affected by the act and would be governed by the law in effect at the time it arose.

Existing law prohibits a registered user of an electronic mail service provider, as defined, from using or causing to be used the provider's equipment located in this state in violation of the provider's policy prohibiting or restricting the use of its equipment for the initiation of unsolicited electronic mail advertisements. Existing law prohibits an individual, corporation, or other entity from using or causing to be used, by initiating an unsolicited electronic mail advertisement, an electronic mail service provider's equipment located in this state in violation of the provider's policy prohibiting or restricting the use of its equipment to

— 3 —                                    SB  12

deliver unsolicited electronic mail advertisements to its registered users. Existing law authorizes an electronic mail service provider whose policy is violated to bring a civil action to recover specified damages, but requires the provider to establish as an element of the cause of action that the defendant had actual notice, prior to the violation, of the provider's policy and that the advertisements would use or cause to be used the provider's equipment located in this state.

This bill would delete the above prohibitions and instead prohibit a person who has been given notice by an e-mail service provider of its policies regarding unsolicited commercial e-mail advertisements from using a computer, computer network, or the computer services of the provider to initiate the transmission of an unsolicited commercial e-mail advertisement from California or to a California e-mail address in violation of those policies. The bill would also delete the requirement that a provider bringing an action for a violation of its policies establish that the defendant had actual notice, prior to the violation, of the provider's policies and that the advertisements would use, or cause to be used, the provider's equipment located in this state. *The bill would authorize an electronic mail service provider whose policy is violated to recover in a civil action $500 for each violation up to a maximum of $200,000 per day.*

A violation of the provisions governing advertising is a misdemeanor. Because a violation of the provisions of this bill would be a crime, the bill would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1      SECTION 1.   Article 1.8 (commencing with Section 17529)
2    is added to Chapter 1 of Part 3 of Division 7 of the Business and
3    Professions Code, to read:
4

95

SB 12                    — 4 —

1   Article 1.8.    Restrictions on Unsolicited Commercial E-Mail
2                        Advertisement
3
4   17529.   For the purpose of this title, the following definitions
5   apply:
6   (a) "California electronic mail address" means any of the
7   following:
8   (1) An electronic mail address furnished by an electronic mail
9   service provider that sends bills for furnishing and maintaining
10   that electronic mail address to a mailing address in this state.
11   (2) An electronic mail address ordinarily accessed from a
12   computer located in this state.
13   (3) An electronic mail address furnished to a resident of this
14   state.
15   (b) "Commercial e-mail advertisement" means any electronic
16   mail message initiated for the purpose of advertising or promoting
17   the lease, sale, rental, gift offer, or other disposition of any
18   property, goods, services, or extension of credit.
19   (c) "Direct consent" means that the recipient has expressly
20   consented to receive the message, either in response to a clear and
21   conspicuous request for the consent or at the recipient's own
22   initiative.
23   (d) "Domain name" means any alphanumeric designation that
24   is registered with or assigned by any domain name registrar as part
25   of an electronic address on the Internet.
26   (e) "Electronic mail" or "e-mail" means an electronic
27   message that is sent to an electronic mail address and transmitted
28   between two or more telecommunications devices, computers, or
29   electronic devices capable of receiving electronic messages,
30   whether or not the message is converted to hard copy format after
31   receipt or is viewed upon transmission or stored for later retrieval.
32   "Electronic mail" or "e-mail" includes electronic messages that
33   are transmitted through a local, regional, or global computer
34   network.
35   (f) "Electronic mail address" means a destination, commonly
36   expressed as a string of characters, to which electronic mail can be
37   sent or delivered. An "electronic mail address" consists of a user
38   name or mailbox and a reference to an Internet domain.
39   (g) "Electronic mail service provider" means any person,
40   including an Internet service provider, that is an intermediary in

95

— 5 —                                    SB  12

1  sending or receiving electronic mail or that provides to end users
2  of the electronic mail service the ability to send or receive
3  electronic mail.
4      (h) "Header information" means the source, destination, and
5  routing information attached to an electronic mail message,
6  including the originating domain name and originating electronic
7  mail address.
8      (i) "Initiate the transmission of a commercial e-mail
9  advertisement" means to transmit or cause to be transmitted a
10  commercial e-mail advertisement or assist in the transmission of
11  a commercial e-mail advertisement by providing electronic mail
12  addresses to which the advertisement may be sent, but does not
13  include the routine transmission of the advertisement through the
14  network or system of a telecommunications utility or an electronic
15  mail service provider through its network or system.
16      (j) "Internet" has the meaning set forth in paragraph (6) of
17  subdivision (f) of Section 17538.
18      (k) "Preexisting or current business relationship," as used in
19  connection with the sending of a commercial e-mail
20  advertisement, means ~~either of the following:~~
21      ~~(1) That within the three-year period ending upon receipt of the~~
22  ~~advertisement,~~ the recipient has made an inquiry, application,
23  purchase, or transaction regarding products or services, *including*
24  *the use of free products or services,* offered by the sender.
25      ~~(2) That the recipient has made an inquiry, application,~~
26  ~~purchase, or transaction regarding products or services offered by~~
27  ~~the sender and the sender maintains an electronic or written record~~
28  ~~of the inquiry, application, purchase, or transaction.~~
29      (*l*) "Recipient" means the authorized user of the electronic
30  mail address to which the message was sent or delivered. If a
31  recipient of a commercial e-mail advertisement has one or more
32  electronic mail addresses to which a commercial e-mail
33  advertisement is sent, the recipient shall be deemed to be a separate
34  recipient for each address to which the advertisement is sent.
35      (m) "Routine transmission" means the transmission, routing,
36  relaying, handling, or storing of an electronic mail message
37  through an automatic technical process.
38      (n) "Sender" means a person or entity who initiates the
39  transmission of a commercial e-mail advertisement or whose
40  product, service, or Internet Web site is advertised or promoted by

1   the message. A sender does not include a person or entity whose
2   product, service, or Internet Web site is contained in, or
3   accompanied by, a commercial e-mail advertisement initiated by
4   a third party where the third party has not obtained authorization
5   from the person or entity to advertise the person or entity's
6   product, service, or Internet Web site.
7      (o)  ''Unsolicited commercial e-mail advertisement'' means a
8   commercial e-mail advertisement sent to a recipient who meets
9   both of the following criteria:
10     (1)  The recipient has not provided direct consent to receive the
11  commercial e-mail advertisement.
12     (2)  The recipient does not have a preexisting or current
13  business relationship with the sender or offeror of the property,
14  goods, or services.
15     If a recipient has either provided direct consent or has a
16  preexisting or current business relationship with the sender,
17  commercial e-mail advertisements from that sender shall not be
18  construed as unsolicited commercial e-mail advertisements.
19     17529.1.   Notwithstanding any other provision of law, no
20  person or entity may do either of the following:
21     (a)  Initiate an unsolicited commercial e-mail advertisement
22  from California.
23     (b)  Initiate an unsolicited commercial e-mail advertisement to
24  a California electronic mail address.
25     17529.2.   (a)  It is unlawful for any person or entity to initiate
26  the transmission of a commercial e-mail advertisement either from
27  California or to a California electronic mail address under any of
28  the following circumstances:
29     (1)  The commercial e-mail advertisement contains or is
30  accompanied by a third party's domain name without permission
31  of the third party.
32     (2)  The commercial e-mail advertisement contains or is
33  accompanied by falsified, misrepresented, obscured, or forged
34  header information.
35     (3)  The commercial e-mail advertisement has a subject line that
36  has the capacity or tendency to mislead the public about the
37  contents of the advertisement.
38     (b)  It is not a violation of paragraph (1) or (2) of subdivision (a)
39  to use a third party's domain name if the third party has given
40  permission for its use by the user.

1     17529.3.    (a)  It is unlawful for any person or entity to collect
2   electronic mail addresses posted on the Internet if the purpose is
3   for the electronic mail addresses to be used by a sender to do either
4   of the following:
5       (1)  Initiate the transmission of unsolicited commercial e-mail
6   advertisements from California.
7       (2)  Initiate the transmission of unsolicited commercial e-mail
8   advertisements to a California electronic mail address.
9       (b)  It is unlawful for any person or entity to sell or otherwise
10  provide a list of electronic mail addresses to be used by a sender
11  to do either of the following:
12      (1)  Initiate the transmission of unsolicited commercial e-mail
13  advertisements from California.
14      (2)  Initiate the transmission of unsolicited commercial e-mail
15  advertisements to a California electronic mail address.
16      (c)  It is unlawful for any person to use an electronic mail
17  address  obtained  by  using  automated  means  based  on  a
18  combination of names, letters, or numbers to do either of the
19  following:
20      (1)  Initiate the transmission of unsolicited commercial e-mail
21  advertisements from California.
22      (2)  Initiate the transmission of unsolicited commercial e-mail
23  advertisements to a California electronic mail address.
24      (d)  It is unlawful for any person to use scripts or other
25  automated means to ~~establish~~ *register for* multiple electronic mail
26  accounts from which to do, or to enable another person to do, either
27  of the following:
28      (1)  Initiate the transmission of unsolicited commercial e-mail
29  advertisements from California.
30      (2)  Initiate the transmission of unsolicited commercial e-mail
31  advertisements to a California electronic mail address.
32      17529.4.    (a)  *(1)*  In addition to any other remedies provided
33  by this article or by other provisions of law, a recipient of a
34  commercial e-mail advertisement transmitted in violation of
35  Section 17529.1, 17529.2, or 17529.3*, or an electronic mail
36  service provider through whose system a commercial e-mail
37  advertisement is transmitted in violation of Section 17529.1,
38  17529.2, or 17529.3,* may bring an action to recover either actual
39  damages  or  five  hundred  dollars  ($500)  for  each  individual
40  violation, whichever is greater, *up to a maximum of two hundred*

SB 12                          — 8 —

1   thousand dollars ($200,000) per day per recipient or electronic
2   mail service provider, and may also recover reasonable costs and
3   attorney's fees.
4   (b)
5   (2) If the court finds that the violation was willful or knowing,
6   the court may, in its discretion, increase the amount of the award
7   to an amount equal to not more than three times the amount
8   available under subdivision (a) paragraph (1).
9   (c)
10  (b) In addition to the award set forth in subdivisions (a) and (b),
11  a civil penalty of two hundred fifty dollars ($250) shall be imposed
12  for each individual violation, to be paid to the High Technology
13  Theft Apprehension and Prosecution Program Trust Fund, which
14  may be expended by the Office of Criminal Justice Planning to
15  fund programs to enhance the capacity of local law enforcement
16  and prosecutors to deter, investigate, and prosecute high
17  technology related crimes.
18  (d)
19  (c) A person or entity shall not be found to have violated this
20  article if, in attempting to comply with this article, the person or
21  entity relies on information provided by a recipient, or prospective
22  recipient, who has expressly disclosed that he or she is not a
23  California resident.
24  (e)
25  (d) It shall be an affirmative defense in any action brought
26  under this article that the defendant has established and
27  implemented, with due care, reasonable practices and procedures
28  to effectively prevent violations of this article.
29  (f)
30  (e) No person or entity shall have a cause of action against an
31  electronic mail service provider only involved in the routine
32  transmission of the commercial e-mail advertisement or
33  unsolicited commercial e-mail advertisement sent in violation of
34  this article.
35  17529.9.   The remedies provided for in this article are in
36  addition to, and not in lieu of, any other remedies provided for by
37  law.
38  SEC. 2.   Section 17538.4 of the Business and Professions
39  Code is repealed.

1    SEC. 3.   Section 17538.45 of the Business and Professions
2  Code is amended to read:
3    17538.45.   (a) The definitions set forth in Section 17529
4  apply to this section.
5    (b) No person shall use a computer, computer network, or the
6  computer services of an electronic service provider to initiate the
7  transmission of an unsolicited commercial e-mail advertisement
8  from California or to a California electronic mail address in
9  violation of the policies established by an electronic mail service
10  provider if the electronic mail service provider has provided the
11  person with notice of those policies. For the purpose of this
12  subdivision, notice of the electronic mail service provider's
13  policies regarding the transmission of unsolicited commercial
14  e-mail advertisements shall be deemed sufficient if the electronic
15  mail service provider maintains an accessible Web page setting
16  forth those policies and provides notice via electronic means
17  between the sending and receiving computers.
18    (c) An electronic mail service provider shall not be required to
19  create a policy prohibiting or restricting the use of its equipment
20  for the initiation or delivery of unsolicited commercial e-mail
21  advertisements.
22    (d) Nothing in this section shall be construed to limit or restrict
23  the rights of an electronic mail service provider under Section
24  230(c)(1) of Title 47 of the United States Code, or any decision of
25  an electronic mail service provider to permit or to restrict access
26  to or use of its system, or any exercise of its editorial function.
27    (e) (1) In addition to another action available under law, any
28  electronic mail service provider whose policy on unsolicited
29  electronic mail advertisements is violated as provided in this
30  section may bring a civil action to recover the actual monetary loss
31  suffered by that provider by reason of that violation, or liquidated
32  damages of ~~fifty dollars ($50)~~ *five hundred dollars ($500)* for each
33  electronic mail message initiated or delivered in violation of this
34  section, whichever amount is greater, up to a maximum of
35  ~~twenty-five thousand dollars ($25,000) per day.~~
36    ~~(2)~~ *two hundred thousand dollars ($200,000) per day per*
37  *electronic mail service provider.*
38    *(2) If the court finds that the violation was willful or knowing,*
39  *the court may, in its discretion, increase the amount of the award*

95

1  *to an amount equal to not more than three times the amount*
2  *available under paragraph (1).*
3  (3)  In any action brought pursuant to paragraph (1), the court
4  may award reasonable attorney's fees to a prevailing party.
5  ~~(3)~~
6  (4)  A violation of this section shall not be subject to Section
7  17534.
8  SEC. 4.   Any cause of action that is in existence before the
9  effective date of this act shall not be affected by this act, but shall
10  instead be governed by the law that was in effect at the time the
11  cause of action arose.
12  SEC. 5.   No reimbursement is required by this act pursuant to
13  Section 6 of Article XIII B of the California Constitution because
14  the only costs that may be incurred by a local agency or school
15  district will be incurred because this act creates a new crime or
16  infraction, eliminates a crime or infraction, or changes the penalty
17  for a crime or infraction, within the meaning of Section 17556 of
18  the Government Code, or changes the definition of a crime within
19  the meaning of Section 6 of Article XIII B of the California
20  Constitution.

O

**EXHIBIT D**

Case 3:17-cv-04497-MMC   Document 28-1   Filed 09/01/17   Page 32 of 133

```
              COMPLETE BILL HISTORY


BILL NUMBER  : S.B. No. 12
AUTHOR  : Bowen
TOPIC   : Electronic mail advertising.

TYPE OF BILL :
                Active
                Non-Urgency
                Non-Appropriations
                Majority Vote Required
                Non-State-Mandated Local Program
                Fiscal
                Non-Tax Levy


BILL HISTORY
2004
Nov. 30 From Assembly without further action.
Nov. 30 From committee without further action.
Apr. 12 From committee with author's amendments.  Read second time.
        Amended.  Re-referred to committee.
2003
July 9  Hearing postponed by committee.
July 1  Set, second hearing.  Failed passage in committee.  Reconsideration
        granted.
June 26 From committee with author's amendments.  Read second time.
        Amended.  Re-referred to committee.
June 17 Set, first hearing. Held in committee and under submission.
June 10 From committee with author's amendments.  Read second time.
        Amended.  Re-referred to committee.
June 5  To Coms. on  B. & P. and  JUD.
May 22  In Assembly.  Read first time.  Held at Desk.
May 22  Read third time.  Passed.   (Ayes 21. Noes 12. Page  1039.) To
        Assembly.
May 20  Read second time.  To third reading.
May 19  From committee:  Be placed on second reading file pursuant to Senate
        Rule 28.8.
May 13  From committee with author's amendments.  Read second time.
        Amended.  Re-referred to committee.
May 8   Set for hearing  May  19.
Apr. 1  Set, first hearing. Hearing canceled at the request of author.
Mar. 27 Set for hearing April   7.
Mar. 26 From committee:  Do pass, but first be re-referred to Com. on  APPR.
        (Ayes  5. Noes  1. Page   361.) Re-referred to Com. on  APPR.
Mar. 18 From committee with author's amendments.  Read second time.
        Amended.  Re-referred to committee.
Mar. 13 Set for hearing  March  24.
Jan. 8  To Com. on  B. & P.
2002
Dec. 3  From print.  May be acted upon on or after  January   2.
Dec. 2  Introduced.  Read first time.  To Com. on RLS. for assignment.  To
        print.
```

# EXHIBIT E

AMENDED IN ASSEMBLY JULY 9, 2003

AMENDED IN ASSEMBLY JUNE 26, 2003

AMENDED IN SENATE MAY 22, 2003

AMENDED IN SENATE MAY 6, 2003

AMENDED IN SENATE MARCH 17, 2003

## SENATE BILL                                   No. 186

### Introduced by Senator Murray
~~(Coauthor: Assembly Member Maldonado)~~
*(Principal coauthor: Assembly Member Correa)*
*(Coauthors: Assembly Members Bermudez, Maldonado, and Simitian)*

February 12, 2003

An act to add Article 1.8 (commencing with Section 17529) to Chapter 1 of Part 3 of Division 7 of the Business and Professions Code, relating to privacy.

LEGISLATIVE COUNSEL'S DIGEST

SB 186, as amended, Murray. Privacy: unsolicited e-mail advertising.

Existing law prohibits a person or entity conducting business in the state from e-mailing or causing to be e-mailed documents consisting of unsolicited advertising material for the lease, sale, rental, gift offer, or other disposition of any realty, goods, services, or extension of credit unless that person or entity establishes a toll-free telephone number or valid sender operated return e-mail address that a recipient may contact to notify the sender not to e-mail the recipient any further unsolicited

94

**SB  186** — 2 —

documents. Existing law requires that notification of the toll-free telephone number, and a valid address that a recipient may write to, be included on these unsolicited e-mailed documents, and prohibits the e-mailing of these unsolicited advertising documents to a person who has requested not to receive any further unsolicited documents. Existing law requires certain unsolicited e-mail advertisements to contain a heading of "ADV:" or "ADV:ADLT." A violation of the provisions governing advertising is a misdemeanor.

This bill would prohibit ~~an advertiser~~ *a person or entity* located in California from ~~using~~ *initiating or sending, or advertising in* unsolicited commercial e-mail advertisements. The bill would prohibit ~~an advertiser~~ *a person or entity* not located in California from ~~using~~ *initiating or sending, or advertising in* unsolicited commercial e-mail advertisements sent to a California e-mail address if the advertiser knows or should reasonably know that it is a California e-mail address. The bill would provide that if any part of these provisions or their application is held invalid, the invalidity would not affect the other provisions.

This bill would authorize the recipient of a commercial e-mail advertisement transmitted in violation of these prohibitions, the electronic mail service provider, or the Attorney General to bring an action to recover actual damages ~~and~~. *The bill would also authorize these parties to recover* liquidated damages of $1,000 per transmitted message ~~or~~ *up to* $1,000,000 per incident, as defined, ~~whichever is less,~~ subject to reduction by a court for specified reasons. The bill would also provide for an award of *reasonable* attorney's fees and costs *to a prevailing plaintiff*. The bill would provide that a cause of action in existence prior to its enactment would be governed by the law in effect at the time it arose. The bill would enact other related provisions.

Because a violation of the bill would be a crime, it would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

**SB 186**

*The people of the State of California do enact as follows:*

1    SECTION 1.    Article 1.8 (commencing with Section 17529)
2  is added to Chapter 1 of Part 3 of Division 7 of the Business and
3  Professions Code, to read:
4
5    Article 1.8.    Restrictions On Unsolicited Commercial E-mail
6                              Advertisers
7
8    17529.  For  the  purpose  of  this  article,  the  following
9  definitions apply:
10    (a)  ''Advertiser''  means  a  person  or  entity  that  advertises
11  through the use of unsolicited commercial e-mail advertisements.
12    (b)  ''California electronic mail address'' or ''California e-mail
13  address''  means any of the following:
14    (1)  An e-mail address furnished by an electronic mail service
15  provider that sends bills for furnishing and maintaining that e-mail
16  address to a mailing address in this state.
17    (2)  An e-mail address ordinarily accessed from a computer
18  located in this state.
19    (3)  An e-mail address furnished to a resident of this state.
20    (c)  ''Commercial e-mail advertisement''  means any electronic
21  mail message initiated for the purpose of advertising or promoting
22  the  lease,  sale,  rental,  gift  offer,  or  other  disposition  of  any
23  property, goods, services, or extension of credit.
24    (d)  ''Direct consent''  means that the recipient has expressly
25  consented to receive the message, either in response to a clear and
26  conspicuous  request  for  the  consent  or  at  the  recipient's  own
27  initiative.
28    (e)  ''Domain name''  means any alphanumeric designation that
29  is registered with or assigned by any domain name registrar as part
30  of an electronic address on the Internet.
31    (f)  ''Electronic  mail''  or  ''e-mail''  means  an  electronic
32  message  that  is  transmitted  between  two  or  more
33  telecommunications  devices,  computers,  or  electronic  devices
34  capable  of  receiving  electronic  messages,  whether  or  not  the
35  message is converted to hard copy format after receipt or is viewed
36  upon  transmission  or  stored  for  later  retrieval.  ''Electronic  mail''
37  or  ''e-mail''  includes  electronic  messages  that  are  transmitted
38  through a local, regional, or global computer network.

1     (g) "Electronic mail address" or "e-mail address" means a
2 destination, commonly expressed as a string of characters, to
3 which electronic mail can be sent or delivered. An "electronic mail
4 address" or "e-mail address" may include a user name or mailbox
5 and a reference to an Internet domain.
6     ~~(h) "Incident" means a single transmission of substantially~~
7 ~~similar content.~~
8     ~~(i)~~
9     *(h) "Electronic mail service provider" means any person,*
10 *including an Internet service provider, that is an intermediary in*
11 *sending or receiving electronic mail or that provides to end users*
12 *of the electronic mail service the ability to send or receive*
13 *electronic mail.*
14     *(i) "Initiate the transmission of a commercial e-mail*
15 *advertisement" means to transmit or cause to be transmitted a*
16 *commercial e-mail advertisement or assist in the transmission of*
17 *a commercial e-mail advertisement by providing electronic mail*
18 *addresses where the advertisement may be sent, but does not*
19 *include the routine transmission of the advertisement through the*
20 *network or system of a telecommunications utility or an electronic*
21 *mail service provider through its network or system.*
22     *(j) "Incident" means a single transmission or delivery by an*
23 *advertiser or sender to a single recipient or to multiple recipients*
24 *of unsolicited commercial e-mail containing substantially similar*
25 *content.*
26     *(k)* "Internet" has the meaning set forth in paragraph (6) of
27 subdivision (e) of Section 17538.
28     ~~(j)~~
29     *(l)* "Preexisting or current business relationship," as used in
30 connection with the sending of a commercial e-mail
31 advertisement, meansthat the recipient has made an inquiry,
32 application, purchase, or transaction*, with or without*
33 *consideration,* regarding products or services offered by the
34 sender.
35     ~~(k)~~ *Commercial e-mail advertisements sent pursuant to the*
36 *exemption provided for a preexisting or current business*
37 *relationship shall provide the recipient of the commercial e-mail*
38 *advertisement with the ability to "opt-out" from receiving the*
39 *commercial e-mail advertisement by calling a toll-free telephone*
40 *number or by sending an "unsubscribe" e-mail to the sender of the*

— 5 —                                    SB 186

1   *commercial e-mail. This opt-out provision does not apply to*
2   *recipients who are receiving free e-mail service.*
3      *(m)* "Recipient" means the addressee of ~~a~~ *an* unsolicited
4   commercial e-mail ~~advertisement~~. If an addressee of ~~a~~ *an*
5   *unsolicited* commercial e-mail ~~advertisement~~ has one or more
6   e-mail addresses to which ~~a~~ *an unsolicited* commercial e-mail
7   ~~advertisement~~ is sent, the addressee shall be deemed to be a
8   separate recipient for each e-mail address to which the
9   ~~advertisement~~ *e-mail* is sent.
10     ~~(l)~~
11     *(n) "Routine transmission" means the transmission, routing,*
12  *relaying, handling, or storing of an electronic mail message*
13  *through an automatic technical process. "Routine transmission"*
14  *shall not include the sending, or the knowing participation in the*
15  *sending, of unsolicited commercial e-mail.*
16     *(o) "Sender" means a person or entity who initiates the*
17  *transmission of an unsolicited commercial e-mail or whose*
18  *product, service, or Internet Web site is contained in, or*
19  *accompanied by, an unsolicited commercial e-mail.*
20     *(p)* "Unsolicited commercial e-mail advertisement" means a
21  commercial e-mail advertisement sent to a recipient who meets
22  both of the following criteria:
23     (1) The recipient has not provided direct consent to receive the
24  commercial e-mail advertisement.
25     (2) The recipient does not have a preexisting or current
26  business relationship, as defined in subdivision ~~(j)~~ *(l)*, with the
27  advertiser ~~of the realty~~ *promoting the lease, sale, rental, gift offer,*
28  *or other disposition of any property*, goods, services, or extension
29  of credit.
30  ~~17529.1.    (a)  Notwithstanding any other provision of law, if~~
31  ~~an advertiser is located in California, the advertiser shall not~~
32  ~~advertise using an unsolicited commercial e-mail advertisement.~~
33  ~~(b)  Notwithstanding any other provision of law, an advertiser~~
34  ~~that is not located in California shall not advertise using an~~
35  ~~unsolicited commercial e-mail advertisement that is sent to a~~
36  ~~California e-mail address if the advertiser knows or should~~
37  ~~reasonably foresee that the e-mail address is a California e-mail~~
38  ~~address.~~
39     *17529.1.   Notwithstanding any other provision of law, a*
40  *person or entity may not do either of the following:*

1    *(a) Initiate or send an unsolicited commercial e-mail*
2    *advertisement from California or advertise in an unsolicited*
3    *commercial e-mail advertisement sent from California.*
4    *(b) Initiate or send an unsolicited commercial e-mail*
5    *advertisement to a California electronic mail address, or advertise*
6    *in an unsolicited commercial e-mail advertisement sent to a*
7    *California electronic mail address.*
8    (c)  The provisions of this section are severable. If any provision
9    of this section or its application is held invalid, that invalidity shall
10   not affect any other provision or application that can be given
11   effect without the invalid provision or application.
12   ~~17529.2.   (a)  In addition to any other remedies provided by~~
13   ~~this article or by other provisions of law, a recipient of an~~
14   ~~unsolicited commercial e-mail advertisement transmitted in~~
15   ~~violation of Section 17529.1, the electronic mail service provider,~~
16   ~~or the Attorney General may bring an action to recover, in addition~~
17   ~~to actual damages, liquidated damages of one thousand dollars~~
18   ~~($1,000) for each unsolicited commercial e-mail advertisement~~
19   ~~transmitted in violation of this article, or one million dollars~~
20   ~~($1,000,000) per incident, whichever is less. The recipient,~~
21   ~~electronic mail service provider, or Attorney General, if the~~
22   ~~prevailing party, may also recover attorney's fees and costs.~~
23   ~~However, there shall not be a cause of action against an electronic~~
24   ~~mail service provider that transmits the unsolicited commercial~~
25   ~~e-mail advertisement over its computer network.~~
26   *17529.2.   (a) (1)  In addition to any other remedies provided*
27   *by this article or by any other provisions of law, a recipient of an*
28   *unsolicited commercial e-mail advertisement transmitted in*
29   *violation of Section 17529.1, the electronic mail service provider,*
30   *or the Attorney General may bring an action to recover both of the*
31   *following:*
32   *(A) Actual damages.*
33   *(B) Liquidated damages of one thousand dollars ($1,000) for*
34   *each unsolicited commercial e-mail advertisement transmitted in*
35   *violation of Section 17529.1, up to one million dollars*
36   *($1,000,000) per incident.*
37   *(2) The recipient, the electronic mail service provider, or the*
38   *Attorney General, if the prevailing plaintiff, may also recover*
39   *reasonable attorney's fees and costs.*

— 7 —                                              **SB 186**

1    *(3) However, there shall not be a cause of action against an*
2    *electronic mail service provider that is only involved in the routine*
3    *transmission of the unsolicited commercial e-mail advertisement*
4    *over its computer network.*
5    (b) If the court finds that the defendant established and
6    implemented, with due care, practices and procedures reasonably
7    designed to effectively prevent unsolicited commercial e-mail
8    advertisements that are in violation of this article, the court shall
9    reduce the liquidated damages recoverable under subdivision (a)
10   to *a maximum of* one hundred dollars ($100) for each unsolicited
11   commercial e-mail advertisement, or *a maximum of* one hundred
12   thousand dollars ($100,000) per incident~~, whichever is less~~.
13   ~~(c)   At the request of any party to an action brought pursuant to~~
14   ~~this article, the court, in its discretion, may conduct all legal~~
15   ~~proceedings in a manner as to protect the secrecy and security of~~
16   ~~the computer, computer network, computer data, computer~~
17   ~~program, and computer software involved in order to prevent~~
18   ~~possible reoccurrence of the same or similar act by another person~~
19   ~~and to protect the trade secrets of any party.~~
20   ~~17229.3.   Nothing in this article shall be construed to have any~~
21   ~~effect on the lawfulness or unlawfulness, under any other~~
22   ~~provision of law, of the adoption, implementation, or enforcement~~
23   ~~by a~~
24   *17529.3.   Nothing in this article shall be construed to limit or*
25   *restrict the adoption, implementation, or enforcement by a*
26   provider of Internet access service of a policy of declining to
27   transmit, *receive,* route, relay, handle, or store certain types of
28   electronic mail messages.
29   *17529.4.   (a)  It is unlawful for any person or entity to collect*
30   *electronic mail addresses posted on the Internet if the purpose of*
31   *the collection is for the electronic mail addresses to be used by a*
32   *sender to do either of the following:*
33   *(1) Initiate or send an unsolicited commercial e-mail*
34   *advertisement from California, or advertise in an unsolicited*
35   *commercial e-mail advertisement sent from California.*
36   *(2) Initiate or send an unsolicited commercial e-mail*
37   *advertisement to a California electronic mail address, or advertise*
38   *in an unsolicited commercial e-mail advertisement sent to*
39   *California electronic mail address.*

1    *(b)  It is unlawful for any person or entity to use an electronic*
2    *mail address obtained by using automated means based on a*
3    *combination of names, letters, or numbers to do either of the*
4    *following:*
5    *(1)  Initiate  or  send  an  unsolicited  commercial  e-mail*
6    *advertisement from California, or advertise in an unsolicited*
7    *commercial e-mail advertisement sent from California.*
8    *(2)  Initiate  or  send  an  unsolicited  commercial  e-mail*
9    *advertisement to a California electronic mail address, or advertise*
10   *in  an  unsolicited  commercial  e-mail  advertisement  sent  to  a*
11   *California electronic mail address.*
12   *(c)  It is unlawful for any person to use scripts or other*
13   *automated means to register for multiple electronic mail accounts*
14   *from which to do, or to enable another person to do, either of the*
15   *following:*
16   *(1)  Initiate  or  send  an  unsolicited  commercial  e-mail*
17   *advertisement from California, or advertise in an unsolicited*
18   *commercial e-mail advertisement sent from California.*
19   *(2)  Initiate  or  send  an  unsolicited  commercial  e-mail*
20   *advertisement to a California electronic mail address, or advertise*
21   *in  an  unsolicited  commercial  e-mail  advertisement  sent  to  a*
22   *California electronic mail address.*
23   *17529.5.   (a)  It is unlawful for any person or entity to*
24   *advertise using an unsolicited commercial e-mail advertisement*
25   *either sent from California or sent to a California electronic mail*
26   *address if the advertiser knows or should reasonably foresee that*
27   *the e-mail address is a California e-mail address under any of the*
28   *following circumstances:*
29   *(1)  The  commercial  e-mail  advertisement  contains  or  is*
30   *accompanied by a third party's domain name without the*
31   *permission of the third party.*
32   *(2)  The  commercial  e-mail  advertisement  contains  or  is*
33   *accompanied by falsified, misrepresented, obscured, or forged*
34   *header information.*
35   *(3)  The commercial e-mail advertisement has a subject line*
36   *that a person knows would be likely to mislead a recipient, acting*
37   *reasonably  under  the  circumstances,  about  a  material  fact*
38   *regarding the contents or subject matter of the message.*
39   SEC. 2.   A cause of action that is in existence before the
40   effective date of this act shall not be affected by this act, but shall

1  instead be governed by the law that was in effect at the time the
2  cause of action arose.
3      SEC. 3.    No reimbursement is required by this act pursuant to
4  Section 6 of Article XIII B of the California Constitution because
5  the only costs that may be incurred by a local agency or school
6  district will be incurred because this act creates a new crime or
7  infraction, eliminates a crime or infraction, or changes the penalty
8  for a crime or infraction, within the meaning of Section 17556 of
9  the Government Code, or changes the definition of a crime within
10  the meaning of Section 6 of Article XIII B of the California
11  Constitution.

O

# EXHIBIT F

AMENDED IN ASSEMBLY JULY 10, 2003

AMENDED IN ASSEMBLY JULY 9, 2003

AMENDED IN ASSEMBLY JUNE 26, 2003

AMENDED IN SENATE MAY 22, 2003

AMENDED IN SENATE MAY 6, 2003

AMENDED IN SENATE MARCH 17, 2003

## SENATE BILL                                    No. 186

### Introduced by Senator Murray
(Principal coauthor: Assembly Member Correa)
(Coauthors: Assembly Members Bermudez, Maldonado, and
Simitian)

February 12, 2003

An act to add Article 1.8 (commencing with Section 17529) to
Chapter 1 of Part 3 of Division 7 of the Business and Professions Code,
relating to privacy.

LEGISLATIVE COUNSEL'S DIGEST

SB 186, as amended, Murray. Privacy: unsolicited e-mail
advertising.

Existing law prohibits a person or entity conducting business in the
state from e-mailing or causing to be e-mailed documents consisting of
unsolicited advertising material for the lease, sale, rental, gift offer, or
other disposition of any realty, goods, services, or extension of credit
unless that person or entity establishes a toll-free telephone number or
valid sender operated return e-mail address that a recipient may contact
to notify the sender not to e-mail the recipient any further unsolicited

93

**SB 186**                    — 2 —

documents. Existing law requires that notification of the toll-free telephone number, and a valid address that a recipient may write to, be included on these unsolicited e-mailed documents, and prohibits the e-mailing of these unsolicited advertising documents to a person who has requested not to receive any further unsolicited documents. Existing law requires certain unsolicited e-mail advertisements to contain a heading of "ADV:" or "ADV:ADLT." A violation of the provisions governing advertising is a misdemeanor.

This bill would prohibit a person or entity located in California from initiating or sending, or advertising in unsolicited commercial e-mail advertisements. The bill would prohibit a person or entity not located in California from initiating or sending, or advertising in unsolicited commercial e-mail advertisements sent to a California e-mail address ~~if the advertiser knows or should reasonably know that it is a California e-mail address~~. The bill would provide that if any part of these provisions or their application is held invalid, the invalidity would not affect the other provisions.

This bill would authorize the recipient of a commercial e-mail advertisement transmitted in violation of these prohibitions, the electronic mail service provider, or the Attorney General to bring an action to recover actual damages. The bill would also authorize these parties to recover liquidated damages of $1,000 per transmitted message up to $1,000,000 per incident, as defined, subject to reduction by a court for specified reasons. The bill would also provide for an award of reasonable attorney's fees and costs to a prevailing plaintiff. The bill would provide that a cause of action in existence prior to its enactment would be governed by the law in effect at the time it arose. The bill would enact other related provisions.

Because a violation of the bill would be a crime, it would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority.  Appropriation:  no.  Fiscal committee:  yes. State-mandated local program: yes.

93

*The people of the State of California do enact as follows:*

1    SECTION 1.    Article 1.8 (commencing with Section 17529)
2  is added to Chapter 1 of Part 3 of Division 7 of the Business and
3  Professions Code, to read:
4
5    Article 1.8.    Restrictions On Unsolicited Commercial E-mail
6                              Advertisers
7
8    17529.  For the purpose of this article, the following
9  definitions apply:
10    (a)  ''Advertiser'' means a person or entity that advertises
11  through the use of unsolicited commercial e-mail advertisements.
12    (b)  ''California electronic mail address'' or ''California e-mail
13  address'' means any of the following:
14    (1)  An e-mail address furnished by an electronic mail service
15  provider that sends bills for furnishing and maintaining that e-mail
16  address to a mailing address in this state.
17    (2)  An e-mail address ordinarily accessed from a computer
18  located in this state.
19    (3)  An e-mail address furnished to a resident of this state.
20    (c)  ''Commercial e-mail advertisement'' means any electronic
21  mail message initiated for the purpose of advertising or promoting
22  the lease, sale, rental, gift offer, or other disposition of any
23  property, goods, services, or extension of credit.
24    (d)  ''Direct consent'' means that the recipient has expressly
25  consented to receive the message, either in response to a clear and
26  conspicuous request for the consent or at the recipient's own
27  initiative.
28    (e)  ''Domain name'' means any alphanumeric designation that
29  is registered with or assigned by any domain name registrar as part
30  of an electronic address on the Internet.
31    (f)  ''Electronic mail'' or ''e-mail'' means an electronic
32  message that is transmitted between two or more
33  telecommunications devices, computers, or electronic devices
34  capable of receiving electronic messages, whether or not the
35  message is converted to hard copy format after receipt or is viewed
36  upon transmission or stored for later retrieval. ''Electronic mail''
37  or ''e-mail'' includes electronic messages that are transmitted
38  through a local, regional, or global computer network.

1  (g) "Electronic mail address" or "e-mail address" means a
2  destination, commonly expressed as a string of characters, to
3  which electronic mail can be sent or delivered. An "electronic mail
4  address" or "e-mail address" may include a user name or mailbox
5  and a reference to an Internet domain.
6  (h) "Electronic mail service provider" means any person,
7  including an Internet service provider, that is an intermediary in
8  sending or receiving electronic mail or that provides to end users
9  of the electronic mail service the ability to send or receive
10  electronic mail.
11  (i) "Initiate the transmission of a commercial e-mail
12  advertisement" means to transmit or cause to be transmitted a
13  commercial e-mail advertisement or assist in the transmission of
14  a commercial e-mail advertisement by providing electronic mail
15  addresses where the advertisement may be sent, but does not
16  include the routine transmission of the advertisement through the
17  network or system of a telecommunications utility or an electronic
18  mail service provider through its network or system.
19  (j) "Incident" means a single transmission or delivery by an
20  advertiser or sender to a single recipient or to multiple recipients
21  of unsolicited commercial e-mail containing substantially similar
22  content.
23  (k) "Internet" has the meaning set forth in paragraph (6) of
24  subdivision (e) of Section 17538.
25  (l) "Preexisting or current business relationship," as used in
26  connection with the sending of a commercial e-mail
27  advertisement, means that the recipient has made an inquiry,
28  application, purchase, or transaction, with or without
29  consideration, regarding products or services offered by the
30  sender. Commercial e-mail advertisements sent pursuant to the
31  exemption provided for a preexisting or current business
32  relationship shall provide the recipient of the commercial e-mail
33  advertisement with the ability to "opt-out" from receiving the
34  commercial e-mail advertisement by calling a toll-free telephone
35  number or by sending an "unsubscribe" e-mail to the sender of the
36  commercial e-mail. This opt-out provision does not apply to
37  recipients who are receiving free e-mail service.
38  (m) "Recipient" means the addressee of an unsolicited
39  commercial e-mail. If an addressee of an unsolicited commercial
40  e-mail has one or more e-mail addresses to which an unsolicited

1 commercial e-mail is sent, the addressee shall be deemed to be a
2 separate recipient for each e-mail address to which the e-mail is
3 sent.
4   (n)  "Routine transmission" means the transmission, routing,
5 relaying, handling, or storing of an electronic mail message
6 through an automatic technical process. "Routine transmission"
7 shall not include the sending, or the knowing participation in the
8 sending, of unsolicited commercial e-mail.
9   (o)  "Sender" means a person or entity who initiates the
10 transmission of an unsolicited commercial e-mail or whose
11 product, service, or Internet Web site is contained in, or
12 accompanied by, an unsolicited commercial e-mail.
13   (p)  "Unsolicited commercial e-mail advertisement" means a
14 commercial e-mail advertisement sent to a recipient who meets
15 both of the following criteria:
16   (1)  The recipient has not provided direct consent to receive the
17 commercial e-mail advertisement.
18   (2)  The recipient does not have a preexisting or current
19 business relationship, as defined in subdivision (l), with the
20 advertiser promoting the lease, sale, rental, gift offer, or other
21 disposition of any property, goods, services, or extension of credit.
22   17529.1.  Notwithstanding any other provision of law, a
23 person or entity may not do either of the following:
24   (a)  Initiate or send an unsolicited commercial e-mail
25 advertisement from California or advertise in an unsolicited
26 commercial e-mail advertisement sent from California.
27   (b)  Initiate or send an unsolicited commercial e-mail
28 advertisement to a California electronic mail address, or advertise
29 in an unsolicited commercial e-mail advertisement sent to a
30 California electronic mail address.
31   (c)  The provisions of this section are severable. If any provision
32 of this section or its application is held invalid, that invalidity shall
33 not affect any other provision or application that can be given
34 effect without the invalid provision or application.
35   17529.2.   (a)  (1)  In addition to any other remedies provided
36 by this article or by any other provisions of law, a recipient of an
37 unsolicited commercial e-mail advertisement transmitted in
38 violation of Section 17529.1, the electronic mail service provider,
39 or the Attorney General may bring an action to recover both of the
40 following:

1    (A)  Actual damages.

2    (B)  Liquidated damages of one thousand dollars ($1,000) for
3  each unsolicited commercial e-mail advertisement transmitted in
4  violation of Section 17529.1, up to one million dollars
5  ($1,000,000) per incident.

6    (2)  The recipient, the electronic mail service provider, or the
7  Attorney General, if the prevailing plaintiff, may also recover
8  reasonable attorney's fees and costs.

9    (3)  However, there shall not be a cause of action against an
10  electronic mail service provider that is only involved in the routine
11  transmission of the unsolicited commercial e-mail advertisement
12  over its computer network.

13    (b)  If the court finds that the defendant established and
14  implemented, with due care, practices and procedures reasonably
15  designed to effectively prevent unsolicited commercial e-mail
16  advertisements that are in violation of this article, the court shall
17  reduce the liquidated damages recoverable under subdivision (a)
18  to a maximum of one hundred dollars ($100) for each unsolicited
19  commercial e-mail advertisement, or a maximum of one hundred
20  thousand dollars ($100,000) per incident.

21    17529.3.   Nothing in this article shall be construed to limit or
22  restrict the adoption, implementation, or enforcement by a
23  provider of Internet access service of a policy of declining to
24  transmit, receive, route, relay, handle, or store certain types of
25  electronic mail messages.

26    17529.4.   (a)  It is unlawful for any person or entity to collect
27  electronic mail addresses posted on the Internet if the purpose of
28  the collection is for the electronic mail addresses to be used by a
29  sender to do either of the following:

30    (1)  Initiate or send an unsolicited commercial e-mail
31  advertisement from California, or advertise in an unsolicited
32  commercial e-mail advertisement sent from California.

33    (2)  Initiate or send an unsolicited commercial e-mail
34  advertisement to a California electronic mail address, or advertise
35  in an unsolicited commercial e-mail advertisement sent to
36  California electronic mail address.

37    (b)  It is unlawful for any person or entity to use an electronic
38  mail address obtained by using automated means based on a
39  combination of names, letters, or numbers to do either of the
40  following:

1    (1) Initiate or send an unsolicited commercial e-mail
2  advertisement from California, or advertise in an unsolicited
3  commercial e-mail advertisement sent from California.
4    (2) Initiate or send an unsolicited commercial e-mail
5  advertisement to a California electronic mail address, or advertise
6  in an unsolicited commercial e-mail advertisement sent to a
7  California electronic mail address.
8    (c) It is unlawful for any person to use scripts or other
9  automated means to register for multiple electronic mail accounts
10  from which to do, or to enable another person to do, either of the
11  following:
12    (1) Initiate or send an unsolicited commercial e-mail
13  advertisement from California, or advertise in an unsolicited
14  commercial e-mail advertisement sent from California.
15    (2) Initiate or send an unsolicited commercial e-mail
16  advertisement to a California electronic mail address, or advertise
17  in an unsolicited commercial e-mail advertisement sent to a
18  California electronic mail address.
19    17529.5.   (a) It is unlawful for any person or entity to
20  advertise using an unsolicited commercial e-mail advertisement
21  either sent from California or sent to a California electronic mail
22  ~~address if the advertiser knows or should reasonably foresee that~~
23  ~~the e-mail address is a California e-mail address under any of the~~
24  *address under any of the* following circumstances:
25    (1) The commercial e-mail advertisement contains or is
26  accompanied by a third party's domain name without the
27  permission of the third party.
28    (2) The commercial e-mail advertisement contains or is
29  accompanied by falsified, misrepresented, obscured, or forged
30  header information.
31    (3) The commercial e-mail advertisement has a subject line that
32  a person knows would be likely to mislead a recipient, acting
33  reasonably under the circumstances, about a material fact
34  regarding the contents or subject matter of the message.
35    SEC. 2.   A cause of action that is in existence before the
36  effective date of this act shall not be affected by this act, but shall
37  instead be governed by the law that was in effect at the time the
38  cause of action arose.
39    SEC. 3.   No reimbursement is required by this act pursuant to
40  Section 6 of Article XIII B of the California Constitution because

SB 186 — 8 —

1  the only costs that may be incurred by a local agency or school
2  district will be incurred because this act creates a new crime or
3  infraction, eliminates a crime or infraction, or changes the penalty
4  for a crime or infraction, within the meaning of Section 17556 of
5  the Government Code, or changes the definition of a crime within
6  the meaning of Section 6 of Article XIII B of the California
7  Constitution.

O

# EXHIBIT G

AMENDED IN ASSEMBLY AUGUST 18, 2003

AMENDED IN ASSEMBLY JULY 10, 2003

AMENDED IN ASSEMBLY JULY 9, 2003

AMENDED IN ASSEMBLY JUNE 26, 2003

AMENDED IN SENATE MAY 22, 2003

AMENDED IN SENATE MAY 6, 2003

AMENDED IN SENATE MARCH 17, 2003

## SENATE BILL                                No. 186

### Introduced by Senator Murray
(Principal coauthor: Assembly Member Correa)
(Coauthors: Assembly Members Bermudez, Maldonado, and Simitian)

February 12, 2003

An act to add Article 1.8 (commencing with Section 17529) to Chapter 1 of Part 3 of Division 7 of, *and to repeal Sections 17538.4 and 17538.41 of,* the Business and Professions Code, relating to privacy.

LEGISLATIVE COUNSEL'S DIGEST

SB 186, as amended, Murray.   Privacy: unsolicited *commercial* e-mail advertising.

Existing law prohibits a person or entity conducting business in the state from e-mailing or causing to be e-mailed documents consisting of unsolicited advertising material for the lease, sale, rental, gift offer, or other disposition of any realty, goods, services, or extension of credit unless that person or entity establishes a toll-free telephone number or

92

valid sender operated return e-mail address that a recipient may contact to notify the sender not to e-mail the recipient any further unsolicited documents. Existing law requires that notification of the toll-free telephone number, and a valid address that a recipient may write to, be included on these unsolicited e-mailed documents, and prohibits the e-mailing of these unsolicited advertising documents to a person who has requested not to receive any further unsolicited documents. Existing law requires certain unsolicited e-mail advertisements to contain a heading of "ADV:" or "ADV:ADLT." A violation of the provisions governing advertising is a misdemeanor.

This bill would *delete these provisions. The bill would instead* prohibit a person or entity located in California from initiating ~~or~~*,* sending, or advertising in*,* unsolicited commercial e-mail advertisements. The bill would prohibit a person or entity not located in California from initiating ~~or~~*,* sending, or advertising in*,* unsolicited commercial e-mail advertisements sent to a California e-mail address. ~~The bill would provide that if any part of these provisions or their application is held invalid, the invalidity would not affect the other provisions.~~ *The bill would also prohibit a person or entity from collecting e-mail addresses or registering multiple e-mail addresses for the purpose of initiating or sending an unsolicited commercial e-mail advertisement from California or to a California e-mail address. The bill would prohibit a person or entity from sending a commercial e-mail advertisement containing certain falsified, misrepresented, obscured, or misleading information.*

This bill would authorize the recipient of a commercial e-mail advertisement transmitted in violation of these prohibitions, the electronic mail service provider, or the Attorney General to bring an action to recover actual damages. The bill would also authorize these parties to recover liquidated damages of $1,000 per transmitted message up to $1,000,000 per incident, as defined, subject to reduction by a court for specified reasons. The bill would also provide for an award of reasonable attorney's fees and costs to a prevailing plaintiff. The bill would provide that a cause of action in existence prior to its enactment would be governed by the law in effect at the time it arose. The bill would enact other related provisions.

*This bill would provide that if any part of these provisions or their applications is deemed invalid, the invalidity would not affect other provisions.*

Because a violation of the bill would be a crime, it would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1  SECTION 1.   Article 1.8 (commencing with Section 17529)
2  is added to Chapter 1 of Part 3 of Division 7 of the Business and
3  Professions Code, to read:
4
5  Article 1.8.   Restrictions On Unsolicited Commercial E-mail
6                              Advertisers
7
8  17529.   *The Legislature hereby finds and declares all of the*
9  *following:*
10  *(a) Roughly 40 percent of all e-mail traffic in the United States*
11  *is comprised of unsolicited commercial e-mail advertisements*
12  *(hereafter spam) and industry experts predict that by the end of*
13  *2003 half of all e-mail traffic will be comprised of spam.*
14  *(b) The increase in spam is not only an annoyance but is also*
15  *an increasing drain on corporate budgets and possibly a threat to*
16  *the continued usefulness of the most successful tool of the*
17  *computer age.*
18  *(c) Complaints from irate business and home-computer users*
19  *regarding spam have skyrocketed, and polls have reported that 74*
20  *percent of respondents favor making mass spamming illegal and*
21  *only 12 percent are opposed, and that 80 percent of respondents*
22  *consider spam very annoying.*
23  *(d) According to Ferris Research Inc., a San Francisco*
24  *consulting group, spam will cost United States organizations more*
25  *than ten billion dollars ($10,000,000,000) this year, including lost*
26  *productivity and the additional equipment, software, and*
27  *manpower needed to combat the problem. California is 12 percent*

1   *of the United States population with an emphasis on technology*
2   *business, and it is therefore estimated that spam costs California*
3   *organizations well over 1.2 billion dollars ($1,020,000,000).*
4     *(e) Like junk faxes, spam imposes a cost on users, using up*
5   *valuable storage space in e-mail inboxes, as well as costly*
6   *computer band width, and on networks and the computer servers*
7   *that power them, and discourages people from using e-mail.*
8     *(f) Spam filters have not proven effective.*
9     *(g) Like traditional paper "junk" mail, spam can be annoying*
10  *and waste time, but it also causes many additional problems*
11  *because it is easy and inexpensive to create, but difficult and costly*
12  *to eliminate.*
13    *(h) The "cost shifting" from senders of deceptive spam to*
14  *Internet business and e-mail users has been likened to sending junk*
15  *mail with postage due or making telemarketing calls to someone's*
16  *pay-per-minute cellular phone.*
17    *(i) Many spammers have become so adept at masking their*
18  *tracks that they are rarely found, and are so technologically*
19  *sophisticated that they can adjust their systems to counter special*
20  *filters and other barriers against spam and can even electronically*
21  *commandeer unprotected computers, turning them into*
22  *spam-launching weapons of mass production.*
23    *(j) There is a need to regulate the advertisers who use spam, as*
24  *well as the actual senders of the spam, because the actual senders*
25  *can be difficult to track down due to some return addresses that*
26  *show up on the display as "unknown" and many others being*
27  *obvious fakes and they are often located offshore.*
28    *(k) The true beneficiaries of spam are the advertisers who*
29  *benefit from the marketing derived from the advertisements.*
30    *(l) In addition, spam is responsible for virus proliferation that*
31  *can cause tremendous damage both to individual computers and*
32  *to business systems.*
33    *(m) Because of the above problems, it is necessary that spam be*
34  *prohibited and that commercial advertising e-mails be regulated*
35  *as set forth in this article.*
36    *17529.1.*   For the purpose of this article, the following
37  definitions apply:
38    (a) "Advertiser" means a person or entity that advertises
39  through the use of unsolicited commercial e-mail advertisements.

**SB  186**

1   (b)  "California electronic mail address" or "California e-mail
2   address" means any of the following:
3   (1)  An e-mail address furnished by an electronic mail service
4   provider that sends bills for furnishing and maintaining that e-mail
5   address to a mailing address in this state.
6   (2)  An e-mail address ordinarily accessed from a computer
7   located in this state.
8   (3)  An e-mail address furnished to a resident of this state.
9   (c)  "Commercial e-mail advertisement" means any electronic
10  mail message initiated for the purpose of advertising or promoting
11  the lease, sale, rental, gift offer, or other disposition of any
12  property, goods, services, or extension of credit.
13  (d)  "Direct consent" means that the recipient has expressly
14  consented to receive ~~the message~~ *e-mail advertisements from the*
15  *advertiser*, either in response to a clear and conspicuous request for
16  the consent or at the recipient's own initiative.
17  (e)  "Domain name" means any alphanumeric designation that
18  is registered with or assigned by any domain name registrar as part
19  of an electronic address on the Internet.
20  (f)  "Electronic mail" or "e-mail" means an electronic
21  message that is transmitted between two or more
22  telecommunications devices, computers, or electronic devices
23  capable of receiving electronic messages, whether or not the
24  message is converted to hard copy format after receipt or is viewed
25  upon transmission or stored for later retrieval. "Electronic mail"
26  or "e-mail" includes electronic messages that are transmitted
27  through a local, regional, or global computer network.
28  (g)  "Electronic mail address" or "e-mail address" means a
29  destination, commonly expressed as a string of characters, to
30  which electronic mail can be sent or delivered. An "electronic mail
31  address" or "e-mail address" may ~~include~~ *consist of* a user name
32  or mailbox and a reference to an Internet domain.
33  (h)  "Electronic mail service provider" means any person,
34  including an Internet service provider, that is an intermediary in
35  sending or receiving electronic mail or that provides to end users
36  of the electronic mail service the ability to send or receive
37  electronic mail.
38  (i)  "Initiate the transmission of a commercial e-mail
39  advertisement" means to transmit or cause to be transmitted a
40  commercial e-mail advertisement or assist in the transmission of

1 a commercial e-mail advertisement by providing electronic mail
2 addresses where the advertisement may be sent, but does not
3 include the routine transmission of the advertisement through the
4 network or system of a telecommunications utility or an electronic
5 mail service provider through its network or system.

6   (j) "Incident" means a single transmission or delivery by an
7 advertiser or sender to a single recipient or to multiple recipients
8 of unsolicited commercial e-mail *advertisement* containing
9 substantially similar content.

10   (k) "Internet" has the meaning set forth in paragraph (6) of
11 subdivision (e) of Section 17538.

12   (*l*) "Preexisting or current business relationship," as used in
13 connection with the sending of a commercial e-mail
14 advertisement, means that the recipient has made an inquiry, *and*
15 *has provided his or her e-mail address, or has made an* application,
16 purchase, or transaction, with or without consideration, regarding
17 products or services offered by the sender.

18   Commercial e-mail advertisements sent pursuant to the
19 exemption provided for a preexisting or current business
20 relationship shall provide the recipient of the commercial e-mail
21 advertisement with the ability to "opt-out" from receiving ~~the~~
22 *further* commercial e-mail ~~advertisement~~ *advertisements* by
23 calling a toll-free telephone number or by sending an
24 "unsubscribe" e-mail to the sender of the commercial e-mail
25 *advertisement*. This opt-out provision does not apply to recipients
26 who are receiving free e-mail service *with regard to commercial*
27 *e-mail advertisements sent by the provider of the e-mail service.*

28   (m) "Recipient" means the addressee of an unsolicited
29 commercial e-mail *advertisement*. If an addressee of an
30 unsolicited commercial e-mail *advertisement* has one or more
31 e-ail addresses to which an unsolicited commercial e-mail
32 *advertisement* is sent, the addressee shall be deemed to be a
33 separate recipient for each e-mail address to which the e-mail
34 *advertisement* is sent.

35   (n) "Routine transmission" means the transmission, routing,
36 relaying, handling, or storing of an electronic mail message
37 through an automatic technical process. "Routine transmission"
38 shall not include the sending, or the knowing participation in the
39 sending, of unsolicited commercial e-mail *advertisements*.

1  (o) "Sender" means a person or entity who initiates the
2  transmission of an unsolicited commercial e-mail ~~or whose~~
3  ~~product, service, or Internet Web site is contained in, or~~
4  ~~accompanied by, an unsolicited commercial e-mail.~~
5  *advertisement.*
6  (p) "Unsolicited commercial e-mail advertisement" means a
7  commercial e-mail advertisement sent to a recipient who meets
8  both of the following criteria:
9  (1) The recipient has not provided direct consent to receive ~~the~~
10 ~~commercial e-mail advertisement.~~ *advertisements from the*
11 *advertiser.*
12 (2) The recipient does not have a preexisting or current
13 business relationship, as defined in subdivision (*l*), with the
14 advertiser promoting the lease, sale, rental, gift offer, or other
15 disposition of any property, goods, services, or extension of credit.
16 ~~17529.1.~~
17 *17529.2.* Notwithstanding any other provision of law, a
18 person or entity may not do either of the following:
19 (a) Initiate or send an unsolicited commercial e-mail
20 advertisement from California or advertise in an unsolicited
21 commercial e-mail advertisement sent from California.
22 (b) Initiate or send an unsolicited commercial e-mail
23 advertisement to a California electronic mail address, or advertise
24 in an unsolicited commercial e-mail advertisement sent to a
25 California electronic mail address.
26 (c) The provisions of this section are severable. If any provision
27 of this section or its application is held invalid, that invalidity shall
28 not affect any other provision or application that can be given
29 effect without the invalid provision or application.
30 ~~17529.2.   (a)  (1)  In addition to any other remedies provided~~
31 ~~by this article or by any other provisions of law, a recipient of an~~
32 ~~unsolicited commercial e-mail advertisement transmitted in~~
33 ~~violation of Section 17529.1, the electronic mail service provider,~~
34 ~~or the Attorney General may bring an action to recover both of the~~
35 ~~following:~~
36 ~~(A) Actual damages.~~
37 ~~(B) Liquidated damages of one thousand dollars ($1,000) for~~
38 ~~each unsolicited commercial e-mail advertisement transmitted in~~
39 ~~violation of Section 17529.1, up to one million dollars~~
40 ~~($1,000,000) per incident.~~

1 ~~(2) The recipient, the electronic mail service provider, or the~~
2 ~~Attorney General, if the prevailing plaintiff, may also recover~~
3 ~~reasonable attorney's fees and costs.~~
4 ~~(3) However, there shall not be a cause of action against an~~
5 ~~electronic mail service provider that is only involved in the routine~~
6 ~~transmission of the unsolicited commercial e-mail advertisement~~
7 ~~over its computer network.~~
8 ~~(b) If the court finds that the defendant established and~~
9 ~~implemented, with due care, practices and procedures reasonably~~
10 ~~designed to effectively prevent unsolicited commercial e-mail~~
11 ~~advertisements that are in violation of this article, the court shall~~
12 ~~reduce the liquidated damages recoverable under subdivision (a)~~
13 ~~to a maximum of one hundred dollars ($100) for each unsolicited~~
14 ~~commercial e-mail advertisement, or a maximum of one hundred~~
15 ~~thousand dollars ($100,000) per incident.~~
16   17529.3.   Nothing in this article shall be construed to limit or
17 restrict the adoption, implementation, or enforcement by a
18 provider of Internet access service of a policy of declining to
19 transmit, receive, route, relay, handle, or store certain types of
20 electronic mail messages.
21   17529.4.   (a) It is unlawful for any person or entity to collect
22 electronic mail addresses posted on the Internet if the purpose of
23 the collection is for the electronic mail addresses to be used by a
24 sender to do either of the following:
25   (1) Initiate or send an unsolicited commercial e-mail
26 advertisement from California, or advertise in an unsolicited
27 commercial e-mail advertisement sent from California.
28   (2) Initiate or send an unsolicited commercial e-mail
29 advertisement to a California electronic mail address, or advertise
30 in an unsolicited commercial e-mail advertisement sent to
31 California electronic mail address.
32   (b)  It is unlawful for any person or entity to use an electronic
33 mail address obtained by using automated means based on a
34 combination of names, letters, or numbers to do either of the
35 following:
36   (1) Initiate or send an unsolicited commercial e-mail
37 advertisement from California, or advertise in an unsolicited
38 commercial e-mail advertisement sent from California.
39   (2) Initiate or send an unsolicited commercial e-mail
40 advertisement to a California electronic mail address, or advertise

1 in an unsolicited commercial e-mail advertisement sent to a
2 California electronic mail address.
3    (c) It is unlawful for any person to use scripts or other
4 automated means to register for multiple electronic mail accounts
5 from which to do, or to enable another person to do, either of the
6 following:
7    (1) Initiate or send an unsolicited commercial e-mail
8 advertisement from California, or advertise in an unsolicited
9 commercial e-mail advertisement sent from California.
10    (2) Initiate or send an unsolicited commercial e-mail
11 advertisement to a California electronic mail address, or advertise
12 in an unsolicited commercial e-mail advertisement sent to a
13 California electronic mail address.
14    17529.5. ~~(a)~~ It is unlawful for any person or entity to
15 advertise using ~~an unsolicited~~ *a* commercial e-mail advertisement
16 either sent from California or sent to a California electronic mail
17 address under any of the following circumstances:
18    ~~(1)~~
19    *(a)* The commercial e-mail advertisement contains or is
20 accompanied by a third party's domain name without the
21 permission of the third party.
22    ~~(2)~~
23    *(b)* The commercial e-mail advertisement contains or is
24 accompanied by falsified, misrepresented, obscured, or forged
25 header information. *This paragraph does not apply to truthful*
26 *information used by a third party who has been lawfully authorized*
27 *by the advertiser to use that information.*
28    ~~(3)~~
29    *(c)* The commercial e-mail advertisement has a subject line that
30 a person knows would be likely to mislead a recipient, acting
31 reasonably under the circumstances, about a material fact
32 regarding the contents or subject matter of the message.
33    *17529.8. (a) (1) In addition to any other remedies provided*
34 *by this article or by any other provisions of law, a recipient of an*
35 *unsolicited commercial e-mail advertisement transmitted in*
36 *violation of this article, an electronic mail service provider, or the*
37 *Attorney General may bring an action against an entity that*
38 *violates any provision of this article to recover either or both of the*
39 *following:*
40    *(A) Actual damages.*

1    *(B) Liquidated damages of one thousand dollars ($1,000) for*
2    *each unsolicited commercial e-mail advertisement transmitted in*
3    *violation of Section 17529.2, up to one million dollars*
4    *($1,000,000) per incident.*
5    *(2) The recipient, an electronic mail service provider, or the*
6    *Attorney General, if the prevailing plaintiff, may also recover*
7    *reasonable attorney's fees and costs.*
8    *(3) However, there shall not be a cause of action against an*
9    *electronic mail service provider that is only involved in the routine*
10   *transmission of the unsolicited commercial e-mail advertisement*
11   *over its computer network.*
12   *(b) If the court finds that the defendant established and*
13   *implemented, with due care, practices and procedures reasonably*
14   *designed to effectively prevent unsolicited commercial e-mail*
15   *advertisements that are in violation of this article, the court shall*
16   *reduce the liquidated damages recoverable under subdivision (a)*
17   *to a maximum of one hundred dollars ($100) for each unsolicited*
18   *commercial e-mail advertisement, or a maximum of one hundred*
19   *thousand dollars ($100,000) per incident.*
20   *17529.9.   The provisions of this article are severable. If any*
21   *provision of this article or its application is held invalid, that*
22   *invalidity shall not affect any other provision or application that*
23   *can be given effect without the invalid provision or application.*
24   SEC. 2.   *Section 17538.4 of the Business and Professions*
25   *Code is repealed.*
26   ~~17538.4.   (a)   No person or entity conducting business in this~~
27   ~~state shall electronically mail (e-mail) or cause to be e-mailed~~
28   ~~documents containing unsolicited advertising material for the~~
29   ~~lease, sale, rental, gift offer, or other disposition of any realty,~~
30   ~~goods, services, or extension of credit unless that person or entity~~
31   ~~establishes a toll-free telephone number or valid sender operated~~
32   ~~return e-mail address that the recipient of the unsolicited~~
33   ~~documents may call or e-mail to notify the sender not to e-mail any~~
34   ~~further unsolicited documents.~~
35   ~~(b)   All unsolicited e-mailed documents subject to this section~~
36   ~~shall include a statement informing the recipient of the toll-free~~
37   ~~telephone number that the recipient may call, or a valid return~~
38   ~~address to which the recipient may write or e-mail, as the case may~~
39   ~~be, notifying the sender not to e-mail the recipient any further~~

1  unsolicited documents to the e-mail address, or addresses,
2  specified by the recipient.
3     The statement shall be the first text in the body of the message
4  and shall be of the same size as the majority of the text of the
5  message.
6     (c)  Upon notification by a recipient of his or her request not to
7  receive any further unsolicited e-mailed documents, no person or
8  entity conducting business in this state shall e-mail or cause to be
9  e-mailed any unsolicited documents to that recipient.
10     (d)  This section shall apply when the unsolicited e-mailed
11  documents are delivered to a California resident via an electronic
12  mail service provider's service or equipment located in this state.
13  For these purposes "electronic mail service provider" means any
14  business or organization qualified to do business in this state that
15  provides individuals, corporations, or other entities the ability to
16  send or receive electronic mail through equipment located in this
17  state and that is an intermediary in sending or receiving electronic
18  mail.
19     (e)  As used in this section, "unsolicited e-mailed documents"
20  means any e-mailed document or documents consisting of
21  advertising material for the lease, sale, rental, gift offer, or other
22  disposition of any realty, goods, services, or extension of credit
23  that meet both of the following requirements:
24     (1)  The documents are addressed to a recipient with whom the
25  initiator does not have an existing business or personal
26  relationship.
27     (2)  The documents are not sent at the request of, or with the
28  express consent of, the recipient.
29     (f)  As used in this section, "e-mail" or "cause to be e-mailed"
30  does not include or refer to the transmission of any documents by
31  a telecommunications utility or Internet service provider to the
32  extent that the telecommunications utility or Internet service
33  provider merely carries that transmission over its network.
34     (g)  In the case of e-mail that consists of unsolicited advertising
35  material for the lease, sale, rental, gift offer, or other disposition
36  of any realty, goods, services, or extension of credit, the subject
37  line of each and every message shall include "ADV:" as the first
38  four characters. If these messages contain information that
39  consists of unsolicited advertising material for the lease, sale,
40  rental, gift offer, or other disposition of any realty, goods, services,

1   or extension of credit that may only be viewed, purchased, rented,
2   leased, or held in possession by an individual 18 years of age and
3   older, the subject line of each and every message shall include
4   "ADV:ADLT" as the first eight characters.
5       (h)  An employer who is the registered owner of more than one
6   e-mail address may notify the person or entity conducting business
7   in this state e-mailing or causing to be e-mailed documents
8   consisting of unsolicited advertising material for the lease, sale,
9   rental, gift offer, or other disposition of any realty, goods, services,
10  or extension of credit of the desire to cease e-mailing on behalf of
11  all of the employees who may use employer-provided and
12  employer-controlled e-mail addresses.
13      (i)  This section, or any part of this section, shall become
14  inoperative on and after the date that federal law is enacted that
15  prohibits or otherwise regulates the transmission of unsolicited
16  advertising by electronic mail (e-mail).
17      SEC. 3.   Section 17538.41 of the Business and Professions
18  Code is repealed.
19      17538.41.   (a) (1) Except as provided in subdivision (b), (c),
20  or (d), no person or entity conducting business in this state shall
21  transmit or cause to be transmitted a text message advertisement
22  to a cellular telephone or pager equipped with short message
23  capability or any similar capability allowing the transmission of
24  text messages. A text message advertisement is a message, the
25  principal purpose of which is to promote the sale of goods or
26  services to the recipient, consisting of advertising material for the
27  lease, sale, rental, gift offer, or other disposition of any realty,
28  goods, services, or extension of credit.
29      (2)  This section shall apply when a text message advertisement
30  is transmitted to a telephone number assigned for cellular
31  telephone or pager service to a California resident.
32      (b)  This section shall not apply to text messages transmitted at
33  the direction of a person or entity offering cellular telephone or
34  pager service if the subscriber is offered an option to not receive
35  those text messages.
36      (c)  This section shall not apply to text messages transmitted by
37  a business that has an existing relationship with the subscriber if
38  the subscriber is offered an option not to receive text messages
39  from that business.

1   (d)  This section shall not apply to text messages transmitted by
2   an affiliate of a business that has an existing relationship with the
3   subscriber, but only if the subscriber has provided consent to the
4   business with which he or she has that relationship to receive text
5   messages from affiliates of that business. "Affiliate" means any
6   company that controls, is controlled by, or is under common
7   control with, another company.
8   (e)  Subdivision (a) shall not impose an obligation on a person
9   or entity offering cellular or pager service to control the
10  transmission of a text message unless the message is transmitted
11  at the direction of that person or entity.
12  *SEC. 4.*   A cause of action that is in existence before the
13  effective date of this act shall not be affected by this act, but shall
14  instead be governed by the law that was in effect at the time the
15  cause of action arose.
16  SEC. 3.
17  *SEC. 5.*   No reimbursement is required by this act pursuant to
18  Section 6 of Article XIII B of the California Constitution because
19  the only costs that may be incurred by a local agency or school
20  district will be incurred because this act creates a new crime or
21  infraction, eliminates a crime or infraction, or changes the penalty
22  for a crime or infraction, within the meaning of Section 17556 of
23  the Government Code, or changes the definition of a crime within
24  the meaning of Section 6 of Article XIII B of the California
25  Constitution.

O

**EXHIBIT H**

AMENDED IN ASSEMBLY AUGUST 25, 2003

AMENDED IN ASSEMBLY AUGUST 18, 2003

AMENDED IN ASSEMBLY JULY 10, 2003

AMENDED IN ASSEMBLY JULY 9, 2003

AMENDED IN ASSEMBLY JUNE 26, 2003

AMENDED IN SENATE MAY 22, 2003

AMENDED IN SENATE MAY 6, 2003

AMENDED IN SENATE MARCH 17, 2003

## SENATE BILL                                   No. 186

### Introduced by Senator Murray
(Principal coauthor: Assembly Member Correa)
(Coauthors: Assembly Members Bermudez, Maldonado, and Simitian)

February 12, 2003

An act to add Article 1.8 (commencing with Section 17529) to Chapter 1 of Part 3 of Division 7 of, and to repeal Sections 17538.4 and 17538.41 *17538.45* of, the Business and Professions Code, relating to privacy.

LEGISLATIVE COUNSEL'S DIGEST

SB 186, as amended, Murray.  Privacy: unsolicited commercial e-mail advertising.

Existing law prohibits a person or entity conducting business in the state from e-mailing or causing to be e-mailed documents consisting of

91

**SB 186** — 2 —

unsolicited advertising material for the lease, sale, rental, gift offer, or other disposition of any realty, goods, services, or extension of credit, *as specified,* unless that person or entity establishes a toll-free telephone number or valid sender operated return e-mail address that a recipient may contact to notify the sender not to e-mail the recipient any further unsolicited documents. Existing law requires that notification of the toll-free telephone number, and a valid address that a recipient may write to, be included on these unsolicited e-mailed documents, and prohibits the e-mailing of these unsolicited advertising documents to a person who has requested not to receive any further unsolicited documents *them.* Existing law requires certain unsolicited e-mail advertisements to contain a heading of "ADV:" or "ADV:ADLT." *Existing law prohibits the registered user of an e-mail service provider or any individual, corporation, or other entity from using or causing to be used the provider's equipment located in this state in violation of the provider's policies with regard to unsolicited e-mail advertisements, as specified. Existing law authorizes an e-mail service provider whose policy is violated to bring a civil action to recover specified damages.* A violation of the provisions governing advertising is a misdemeanor.

This bill would delete these provisions. The bill would instead prohibit a person or entity located in California from initiating, sending, or advertising in, unsolicited commercial e-mail advertisements. The bill would prohibit a person or entity not located in California from initiating, sending, or advertising in, unsolicited commercial e-mail advertisements sent to a California e-mail address. The bill would also prohibit a person or entity from collecting e-mail addresses or registering multiple e-mail addresses for the purpose of initiating or sending an unsolicited commercial e-mail advertisement from California or to a California e-mail address. The bill would prohibit a person or entity from sending a commercial e-mail advertisement containing certain falsified, misrepresented, obscured, or misleading information.

This bill would authorize the recipient of a commercial e-mail advertisement transmitted in violation of these prohibitions, the electronic mail service provider, or the Attorney General to bring an action to recover actual damages. The bill *and* would also authorize these parties to recover liquidated damages of $1,000 per transmitted message up to $1,000,000 per incident, as defined, subject to reduction by a court for specified reasons. The bill would also provide for an award of reasonable attorney's fees and costs to a prevailing plaintiff.

The bill would provide that a cause of action in existence prior to its enactment would be governed by the law in effect at the time it arose. The bill would enact other related provisions.

This bill would provide that if any part of these provisions or their applications is deemed invalid, the invalidity would not affect other provisions.

Because a violation of the bill would be a crime, it would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote:  majority.  Appropriation:  no.  Fiscal committee:  yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1   SECTION 1.   Article 1.8 (commencing with Section 17529)
2  is added to Chapter 1 of Part 3 of Division 7 of the Business and
3  Professions Code, to read:
4
5   Article 1.8.   Restrictions On Unsolicited Commercial E-mail
6                            Advertisers
7
8   17529.   The Legislature hereby finds and declares all of the
9  following:
10   (a)  Roughly 40 percent of all e-mail traffic in the United States
11  is comprised of unsolicited commercial e-mail advertisements
12  (hereafter spam) and industry experts predict that by the end of
13  2003 half of all e-mail traffic will be comprised of spam.
14   (b)  The increase in spam is not only an annoyance but is also
15  an increasing drain on corporate budgets and possibly a threat to
16  the continued usefulness of the most successful tool of the
17  computer age.
18   (c)  Complaints from irate business and home-computer users
19  regarding spam have skyrocketed, and polls have reported that 74
20  percent of respondents favor making mass spamming illegal and

1  only 12 percent are opposed, and that 80 percent of respondents
2  consider spam very annoying.
3     (d) According to Ferris Research Inc., a San Francisco
4  consulting group, spam will cost United States organizations more
5  than ten billion dollars ($10,000,000,000) this year, including lost
6  productivity and the additional equipment, software, and
7  manpower needed to combat the problem. California is 12 percent
8  of the United States population with an emphasis on technology
9  business, and it is therefore estimated that spam costs California
10 organizations well over 1.2 billion dollars ~~($1,020,000,000)~~
11 *($1,200,000,000)*.
12    (e) Like junk faxes, spam imposes a cost on users, using up
13 valuable storage space in e-mail inboxes, as well as costly
14 computer band width, and on networks and the computer servers
15 that power them, and discourages people from using e-mail.
16    (f) Spam filters have not proven effective.
17    (g) Like traditional paper ''junk'' mail, spam can be annoying
18 and waste time, but it also causes many additional problems
19 because it is easy and inexpensive to create, but difficult and costly
20 to eliminate.
21    (h) The ''cost shifting'' from senders of deceptive spam to
22 Internet business and e-mail users has been likened to sending junk
23 mail with postage due or making telemarketing calls to someone's
24 pay-per-minute cellular phone.
25    (i) Many spammers have become so adept at masking their
26 tracks that they are rarely found, and are so technologically
27 sophisticated that they can adjust their systems to counter special
28 filters and other barriers against spam and can even electronically
29 commandeer unprotected computers, turning them into
30 spam-launching weapons of mass production.
31    (j) There is a need to regulate the advertisers who use spam, as
32 well as the actual senders of the spam, because the actual senders
33 can be difficult to track down due to some return addresses that
34 show up on the display as ''unknown'' and many others being
35 obvious fakes and they are often located offshore.
36    (k) The true beneficiaries of spam are the advertisers who
37 benefit from the marketing derived from the advertisements.
38    (*l*) In addition, spam is responsible for virus proliferation that
39 can cause tremendous damage both to individual computers and to
40 business systems.

1    (m)  Because of the above problems, it is necessary that spam
2  be  prohibited  and  that  commercial  advertising  e-mails  be
3  regulated as set forth in this article.
4    17529.1.  For  the  purpose  of  this  article,  the  following
5  definitions apply:
6    (a)  "Advertiser"  means  a  person  or  entity  that  advertises
7  through the use of unsolicited commercial e-mail advertisements.
8    (b)  "California electronic mail address" or "California e-mail
9  address" means any of the following:
10    (1)  An e-mail address furnished by an electronic mail service
11  provider that sends bills for furnishing and maintaining that e-mail
12  address to a mailing address in this state.
13    (2)  An e-mail address ordinarily accessed from a computer
14  located in this state.
15    (3)  An e-mail address furnished to a resident of this state.
16    (c)  "Commercial e-mail advertisement" means any electronic
17  mail message initiated for the purpose of advertising or promoting
18  the  lease,  sale,  rental,  gift  offer,  or  other  disposition  of  any
19  property, goods, services, or extension of credit.
20    (d)  "Direct consent" means that the recipient has expressly
21  consented to receive e-mail advertisements from the advertiser,
22  either  in  response  to  a  clear  and  conspicuous  request  for  the
23  consent or at the recipient's own initiative.
24    (e)  "Domain name"  means  any  alphanumeric  designation  that
25  is registered with or assigned by any domain name registrar as part
26  of an electronic address on the Internet.
27    (f)  "Electronic  mail"  or  "e-mail"  means  an  electronic
28  message  that  is  transmitted  between  two  or  more
29  telecommunications devices, computers, or electronic devices
30  capable  of  receiving  electronic  messages,  whether  or  not  the
31  message is converted to hard copy format after receipt or is viewed
32  upon transmission or stored for later retrieval. "Electronic mail"
33  or  "e-mail"  includes  electronic  messages  that  are  transmitted
34  through a local, regional, or global computer network.
35    (g)  "Electronic mail address" or "e-mail address" means a
36  destination, commonly expressed as a string of characters, to
37  which electronic mail can be sent or delivered. An "electronic mail
38  address" or "e-mail address" ~~may consist~~ *consists* of a user name
39  or mailbox and a reference to an Internet domain.

1    (h) "Electronic mail service provider" means any person,
2 including an Internet service provider, that is an intermediary in
3 sending or receiving electronic mail or that provides to end users
4 of the electronic mail service the ability to send or receive
5 electronic mail.

6    (i) "Initiate the transmission of a commercial e-mail
7 advertisement" means to transmit or cause to be transmitted a
8 commercial e-mail advertisement or assist in the transmission of
9 a commercial e-mail advertisement by providing electronic mail
10 addresses where the advertisement may be sent, but does not
11 include the routine transmission of the advertisement through the
12 network or system of a telecommunications utility or an electronic
13 mail service provider through its network or system.

14    (j) "Incident" means a single transmission or delivery by an
15 advertiser or sender to a single recipient or to multiple recipients
16 of unsolicited commercial e-mail advertisement containing
17 substantially similar content.

18    (k) "Internet" has the meaning set forth in paragraph (6) of
19 subdivision (e) of Section 17538.

20    (*l*) "Preexisting or current business relationship," as used in
21 connection with the sending of a commercial e-mail
22 advertisement, means that the recipient has made an inquiry and
23 has provided his or her e-mail address, or has made an application,
24 purchase, or transaction, with or without consideration, regarding
25 products or services offered by the sender.

26    Commercial e-mail advertisements sent pursuant to the
27 exemption provided for a preexisting or current business
28 relationship shall provide the recipient of the commercial e-mail
29 advertisement with the ability to "opt-out" from receiving further
30 commercial e-mail advertisements by calling a toll-free telephone
31 number or by sending an "unsubscribe" e-mail to the sender of the
32 commercial e-mail advertisement. This opt-out provision does not
33 apply to recipients who are receiving free e-mail service with
34 regard to commercial e-mail advertisements sent by the provider
35 of the e-mail service.

36    (m) "Recipient" means the addressee of an unsolicited
37 commercial e-mail advertisement. If an addressee of an
38 unsolicited commercial e-mail advertisement has one or more e-ail
39 addresses to which an unsolicited commercial e-mail
40 advertisement is sent, the addressee shall be deemed to be a

1 separate recipient for each e-mail address to which the e-mail
2 advertisement is sent.
3    (n) "Routine transmission" means the transmission, routing,
4 relaying, handling, or storing of an electronic mail message
5 through an automatic technical process. "Routine transmission"
6 shall not include the sending, or the knowing participation in the
7 sending, of unsolicited commercial e-mail advertisements.
8    (o) "Sender" means a person or entity who initiates the
9 transmission of an unsolicited commercial e-mail advertisement.
10    (p) "Unsolicited commercial e-mail advertisement" means a
11 commercial e-mail advertisement sent to a recipient who meets
12 both of the following criteria:
13    (1) The recipient has not provided direct consent to receive
14 advertisements from the advertiser.
15    (2) The recipient does not have a preexisting or current
16 business relationship, as defined in subdivision (*l*), with the
17 advertiser promoting the lease, sale, rental, gift offer, or other
18 disposition of any property, goods, services, or extension of credit.
19    17529.2.  Notwithstanding any other provision of law, a
20 person or entity may not do either of the following:
21    (a) Initiate or send an unsolicited commercial e-mail
22 advertisement from California or advertise in an unsolicited
23 commercial e-mail advertisement sent from California.
24    (b) Initiate or send an unsolicited commercial e-mail
25 advertisement to a California electronic mail address, or advertise
26 in an unsolicited commercial e-mail advertisement sent to a
27 California electronic mail address.
28    (c) The provisions of this section are severable. If any provision
29 of this section or its application is held invalid, that invalidity shall
30 not affect any other provision or application that can be given
31 effect without the invalid provision or application.
32    17529.3.  Nothing in this article shall be construed to limit or
33 restrict the adoption, implementation, or enforcement by a
34 provider of Internet access service of a policy of declining to
35 transmit, receive, route, relay, handle, or store certain types of
36 electronic mail messages.
37    17529.4.  (a) It is unlawful for any person or entity to collect
38 electronic mail addresses posted on the Internet if the purpose of
39 the collection is for the electronic mail addresses to be used by a
40 sender to do either of the following:

SB 186                        — 8 —

1    (1) Initiate or send an unsolicited commercial e-mail
2  advertisement from California, or advertise in an unsolicited
3  commercial e-mail advertisement sent from California.
4    (2) Initiate or send an unsolicited commercial e-mail
5  advertisement to a California electronic mail address, or advertise
6  in an unsolicited commercial e-mail advertisement sent to
7  California electronic mail address.
8    (b) It is unlawful for any person or entity to use an electronic
9  mail address obtained by using automated means based on a
10  combination of names, letters, or numbers to do either of the
11  following:
12    (1) Initiate or send an unsolicited commercial e-mail
13  advertisement from California, or advertise in an unsolicited
14  commercial e-mail advertisement sent from California.
15    (2) Initiate or send an unsolicited commercial e-mail
16  advertisement to a California electronic mail address, or advertise
17  in an unsolicited commercial e-mail advertisement sent to a
18  California electronic mail address.
19    (c) It is unlawful for any person to use scripts or other
20  automated means to register for multiple electronic mail accounts
21  from which to do, or to enable another person to do, either of the
22  following:
23    (1) Initiate or send an unsolicited commercial e-mail
24  advertisement from California, or advertise in an unsolicited
25  commercial e-mail advertisement sent from California.
26    (2) Initiate or send an unsolicited commercial e-mail
27  advertisement to a California electronic mail address, or advertise
28  in an unsolicited commercial e-mail advertisement sent to a
29  California electronic mail address.
30    17529.5.   It is unlawful for any person or entity to advertise
31  using a commercial e-mail advertisement either sent from
32  California or sent to a California electronic mail address under any
33  of the following circumstances:
34    (a) The commercial e-mail advertisement contains or is
35  accompanied by a third party's domain name without the
36  permission of the third party.
37    (b) The commercial e-mail advertisement contains or is
38  accompanied by falsified, misrepresented, obscured, or forged
39  header information. This paragraph does not apply to truthful

1 information used by a third party who has been lawfully authorized
2 by the advertiser to use that information.
3    (c)  The commercial e-mail advertisement has a subject line that
4 a person knows would be likely to mislead a recipient, acting
5 reasonably under the circumstances, about a material fact
6 regarding the contents or subject matter of the message.
7    17529.8.  (a) (1)  In addition to any other remedies provided
8 by this article or by any other provisions of law, a recipient of an
9 unsolicited commercial e-mail advertisement transmitted in
10 violation of this article, an electronic mail service provider, or the
11 Attorney General may bring an action against an entity that
12 violates any provision of this article to recover either or both of the
13 following:
14    (A)  Actual damages.
15    (B)  Liquidated damages of one thousand dollars ($1,000) for
16 each unsolicited commercial e-mail advertisement transmitted in
17 violation of Section 17529.2, up to one million dollars
18 ($1,000,000) per incident.
19    (2)  The recipient, an electronic mail service provider, or the
20 Attorney General, if the prevailing plaintiff, may also recover
21 reasonable attorney's fees and costs.
22    (3)  However, there shall not be a cause of action against an
23 electronic mail service provider that is only involved in the routine
24 transmission of the unsolicited commercial e-mail advertisement
25 over its computer network.
26    (b)  If the court finds that the defendant established and
27 implemented, with due care, practices and procedures reasonably
28 designed to effectively prevent unsolicited commercial e-mail
29 advertisements that are in violation of this article, the court shall
30 reduce the liquidated damages recoverable under subdivision (a)
31 to a maximum of one hundred dollars ($100) for each unsolicited
32 commercial e-mail advertisement, or a maximum of one hundred
33 thousand dollars ($100,000) per incident.
34    17529.9.   The provisions of this article are severable. If any
35 provision of this article or its application is held invalid, that
36 invalidity shall not affect any other provision or application that
37 can be given effect without the invalid provision or application.
38    SEC. 2.  Section 17538.4 of the Business and Professions
39 Code is repealed.

1   SEC. 3.   Section 17538.41 of the Business and Professions
2   Code is repealed.
3   *SEC. 3.   Section 17538.45 of the Business and Professions*
4   *Code is repealed.*
5   17538.45.   (a) For purposes of this section, the following
6   words have the following meanings:
7   (1) "Electronic mail advertisement" means any electronic
8   mail message, the principal purpose of which is to promote,
9   directly or indirectly, the sale or other distribution of goods or
10   services to the recipient.
11   (2) "Unsolicited electronic mail advertisement" means any
12   electronic mail advertisement that meets both of the following
13   requirements:
14   (A) It is addressed to a recipient with whom the initiator does
15   not have an existing business or personal relationship.
16   (B) It is not sent at the request of or with the express consent of
17   the recipient.
18   (3) "Electronic mail service provider" means any business or
19   organization qualified to do business in California that provides
20   registered users the ability to send or receive electronic mail
21   through equipment located in this state and that is an intermediary
22   in sending or receiving electronic mail.
23   (4) "Initiation" of an unsolicited electronic mail
24   advertisement refers to the action by the initial sender of the
25   electronic mail advertisement. It does not refer to the actions of
26   any intervening electronic mail service provider that may handle
27   or retransmit the electronic message.
28   (5) "Registered user" means any individual, corporation, or
29   other entity that maintains an electronic mail address with an
30   electronic mail service provider.
31   (b) No registered user of an electronic mail service provider
32   shall use or cause to be used that electronic mail service provider's
33   equipment located in this state in violation of that electronic mail
34   service provider's policy prohibiting or restricting the use of its
35   service or equipment for the initiation of unsolicited electronic
36   mail advertisements.
37   (c) No individual, corporation, or other entity shall use or cause
38   to be used, by initiating an unsolicited electronic mail
39   advertisement, an electronic mail service provider's equipment
40   located in this state in violation of that electronic mail service

1  provider's policy prohibiting or restricting the use of its equipment
2  to deliver unsolicited electronic mail advertisements to its
3  registered users.
4      (d) An electronic mail service provider shall not be required to
5  create a policy prohibiting or restricting the use of its equipment
6  for the initiation or delivery of unsolicited electronic mail
7  advertisements.
8      (e) Nothing in this section shall be construed to limit or restrict
9  the rights of an electronic mail service provider under Section
10  230(c)(1) of Title 47 of the United States Code, or any decision of
11  an electronic mail service provider to permit or to restrict access
12  to or use of its system, or any exercise of its editorial function.
13      (f) (1) In addition to any other action available under law, any
14  electronic mail service provider whose policy on unsolicited
15  electronic mail advertisements is violated as provided in this
16  section may bring a civil action to recover the actual monetary loss
17  suffered by that provider by reason of that violation, or liquidated
18  damages of fifty dollars ($50) for each electronic mail message
19  initiated or delivered in violation of this section, up to a maximum
20  of twenty-five thousand dollars ($25,000) per day, whichever
21  amount is greater.
22      (2) In any action brought pursuant to paragraph (1), the court
23  may award reasonable attorney's fees to a prevailing party.
24      (3) (A) In any action brought pursuant to paragraph (1), the
25  electronic mail service provider shall be required to establish as an
26  element of its cause of action that prior to the alleged violation, the
27  defendant had actual notice of both of the following:
28      (i) The electronic mail service provider's policy on unsolicited
29  electronic mail advertising.
30      (ii) The fact that the defendant's unsolicited electronic mail
31  advertisements would use or cause to be used the electronic mail
32  service provider's equipment located in this state.
33      (B) In this regard, the Legislature finds that with rapid
34  advances in Internet technology, and electronic mail technology in
35  particular, Internet service providers are already experimenting
36  with embedding policy statements directly into the software
37  running on the computers used to provide electronic mail services
38  in a manner that displays the policy statements every time an
39  electronic mail delivery is requested. While the state of the
40  technology does not support such a finding at present, the

1  ~~Legislature believes that, in a given case at some future date, a~~
2  ~~showing that notice was supplied via electronic means between the~~
3  ~~sending and receiving computers could be held to constitute actual~~
4  ~~notice to the sender for purposes of this paragraph.~~
5  ~~(4)  A violation of this section shall not be subject to Section~~
6  ~~17534.~~
7      SEC. 4.   A cause of action that is in existence before the
8  effective date of this act shall not be affected by this act, but shall
9  instead be governed by the law that was in effect at the time the
10  cause of action arose.
11      SEC. 5.   No reimbursement is required by this act pursuant to
12  Section 6 of Article XIII B of the California Constitution because
13  the only costs that may be incurred by a local agency or school
14  district will be incurred because this act creates a new crime or
15  infraction, eliminates a crime or infraction, or changes the penalty
16  for a crime or infraction, within the meaning of Section 17556 of
17  the Government Code, or changes the definition of a crime within
18  the meaning of Section 6 of Article XIII B of the California
19  Constitution.

O

# EXHIBIT I

AMENDED IN ASSEMBLY SEPTEMBER 5, 2003

AMENDED IN ASSEMBLY AUGUST 25, 2003

AMENDED IN ASSEMBLY AUGUST 18, 2003

AMENDED IN ASSEMBLY JULY 10, 2003

AMENDED IN ASSEMBLY JULY 9, 2003

AMENDED IN ASSEMBLY JUNE 26, 2003

AMENDED IN SENATE MAY 22, 2003

AMENDED IN SENATE MAY 6, 2003

AMENDED IN SENATE MARCH 17, 2003

## SENATE BILL                              No. 186

### Introduced by Senator Murray
(Principal coauthor: Assembly Member Correa)
(Coauthors: Assembly Members Bermudez, Maldonado, and
Simitian)

February 12, 2003

An act to *amend Section 17538.45 of, to* add Article 1.8
(commencing with Section 17529) to Chapter 1 of Part 3 of Division
7 of, and to repeal ~~Sections~~ *Section* 17538.4 ~~and 17538.45~~ of, the
Business and Professions Code, relating to privacy.

LEGISLATIVE COUNSEL'S DIGEST

SB 186, as amended, Murray.   Privacy: unsolicited commercial
e-mail advertising.

90

**SB 186** — 2 —

Existing law prohibits a person or entity conducting business in the state from e-mailing or causing to be e-mailed documents consisting of unsolicited advertising material, as specified, unless that person or entity establishes a toll-free telephone number or valid sender operated return e-mail address that a recipient may contact to notify the sender not to e-mail any further unsolicited documents. Existing law requires that notification of the toll-free telephone number, and a valid address that a recipient may write to, be included on these unsolicited e-mailed documents, and prohibits the e-mailing of these unsolicited advertising documents to a person who has requested not to receive them. Existing law requires certain unsolicited e-mail advertisements to contain a heading of "ADV:" or "ADV:ADLT." ~~Existing law prohibits the registered user of an e-mail service provider or any individual, corporation, or other entity from using or causing to be used the provider's equipment located in this state in violation of the provider's policies with regard to unsolicited e-mail advertisements, as specified. Existing law authorizes an e-mail service provider whose policy is violated to bring a civil action to recover specified damages.~~ A violation of the provisions governing advertising is a misdemeanor.

This bill would delete these provisions. The bill would instead prohibit a person or entity located in California from initiating~~, sending,~~ or advertising in~~,~~ unsolicited commercial e-mail advertisements. The bill would prohibit a person or entity not located in California from initiating~~, sending,~~ or advertising in~~,~~ unsolicited commercial e-mail advertisements sent to a California e-mail address. The bill would also prohibit a person or entity from collecting e-mail addresses or registering multiple e-mail addresses for the purpose of initiating or ~~sending~~ *advertising in* an unsolicited commercial e-mail advertisement from California or to a California e-mail address. The bill would prohibit a person or entity from ~~sending~~ *using* a commercial e-mail advertisement containing certain falsified, misrepresented, obscured, or misleading information.

This bill would authorize the recipient of a commercial e-mail advertisement transmitted in violation of these prohibitions, the electronic mail service provider, or the Attorney General to bring an action to recover actual damages and would authorize these parties to recover liquidated damages of $1,000 per transmitted message up to $1,000,000 per incident, as defined, subject to reduction by a court for specified reasons. The bill would ~~also~~ provide for an award of reasonable attorney's fees and costs to a prevailing plaintiff. The bill

90

would provide that a cause of action in existence prior to its enactment would be governed by the law in effect at the time it arose. The bill would enact other related provisions.

*Existing law prohibits the registered user of an e-mail service provider, or any individual, corporation, or other entity, from using or causing to be used the provider's equipment located in this state in violation of the provider's policies with regard to unsolicited e-mail advertisements. Existing law authorizes an e-mail service provider whose policy is violated to bring a civil action to recover specified damages.*

*This bill would prohibit an e-mail service provider from bringing an action under both this provision and other provisions being added by the bill for the same unsolicited e-mail advertisement.*

This bill would provide that if any part of these provisions or their applications is deemed invalid, the invalidity would not affect other provisions.

Because a violation of the bill would be a crime, it would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1     SECTION 1.   Article 1.8 (commencing with Section 17529)
2 is added to Chapter 1 of Part 3 of Division 7 of the Business and
3 Professions Code, to read:
4
5   Article 1.8.    Restrictions On Unsolicited Commercial E-mail
6                              Advertisers
7
8     17529.   The Legislature hereby finds and declares all of the
9 following:
10     (a)  Roughly 40 percent of all e-mail traffic in the United States
11 is comprised of unsolicited commercial e-mail advertisements

1  (hereafter spam) and industry experts predict that by the end of
2  2003 half of all e-mail traffic will be comprised of spam.
3    (b)  The increase in spam is not only an annoyance but is also
4  an increasing drain on corporate budgets and possibly a threat to
5  the continued usefulness of the most successful tool of the
6  computer age.
7    (c)  Complaints from irate business and home-computer users
8  regarding spam have skyrocketed, and polls have reported that 74
9  percent of respondents favor making mass spamming illegal and
10  only 12 percent are opposed, and that 80 percent of respondents
11  consider spam very annoying.
12    (d)  According to Ferris Research Inc., a San Francisco
13  consulting group, spam will cost United States organizations more
14  than ten billion dollars ($10,000,000,000) this year, including lost
15  productivity and the additional equipment, software, and
16  manpower needed to combat the problem. California is 12 percent
17  of the United States population with an emphasis on technology
18  business, and it is therefore estimated that spam costs California
19  organizations well over 1.2 billion dollars ($1,200,000,000).
20    (e)  Like junk faxes, spam imposes a cost on users, using up
21  valuable storage space in e-mail inboxes, as well as costly
22  computer band width, and on networks and the computer servers
23  that power them, and discourages people from using e-mail.
24    (f)  Spam filters have not proven effective.
25    (g)  Like traditional paper "junk" mail, spam can be annoying
26  and waste time, but it also causes many additional problems
27  because it is easy and inexpensive to create, but difficult and costly
28  to eliminate.
29    (h)  The "cost shifting" from ~~senders of deceptive spam~~
30  *deceptive spammers* to Internet business and e-mail users has been
31  likened to sending junk mail with postage due or making
32  telemarketing calls to someone's pay-per-minute cellular phone.
33    (i)  Many spammers have become so adept at masking their
34  tracks that they are rarely found, and are so technologically
35  sophisticated that they can adjust their systems to counter special
36  filters and other barriers against spam and can even electronically
37  commandeer unprotected computers, turning them into
38  spam-launching weapons of mass production.
39    (j)  There is a need to regulate the advertisers who use spam, as
40  well as the actual ~~senders of the spam, because the actual senders~~

— 5 —                    SB 186

1 *spammers, because the actual spammers* can be difficult to track
2 down due to some return addresses that show up on the display as
3 ''unknown'' and many others being obvious fakes and they are
4 often located offshore.
5     (k)  The true beneficiaries of spam are the advertisers who
6 benefit from the marketing derived from the advertisements.
7     (*l*)  In addition, spam is responsible for virus proliferation that
8 can cause tremendous damage both to individual computers and to
9 business systems.
10    (m)  Because of the above problems, it is necessary that spam
11 be prohibited and that commercial advertising e-mails be
12 regulated as set forth in this article.
13    17529.1.  For the purpose of this article, the following
14 definitions apply:
15    (a)  ''Advertiser'' means a person or entity that advertises
16 through the use of ~~unsolicited~~ commercial e-mail advertisements.
17    (b)  ''California electronic mail address'' or ''California e-mail
18 address'' means any of the following:
19    (1)  An e-mail address furnished by an electronic mail service
20 provider that sends bills for furnishing and maintaining that e-mail
21 address to a mailing address in this state.
22    (2)  An e-mail address ordinarily accessed from a computer
23 located in this state.
24    (3)  An e-mail address furnished to a resident of this state.
25    (c)  ''Commercial e-mail advertisement'' means any electronic
26 mail message initiated for the purpose of advertising or promoting
27 the lease, sale, rental, gift offer, or other disposition of any
28 property, goods, services, or extension of credit.
29    (d)  ''Direct consent'' means that the recipient has expressly
30 consented to receive e-mail advertisements from the advertiser,
31 either in response to a clear and conspicuous request for the
32 consent or at the recipient's own initiative.
33    (e)  ''Domain name'' means any alphanumeric designation that
34 is registered with or assigned by any domain name registrar as part
35 of an electronic address on the Internet.
36    (f)  ''Electronic mail'' or ''e-mail'' means an electronic
37 message that is *sent to an e-mail address and* transmitted between
38 two or more telecommunications devices, computers, or
39 electronic devices capable of receiving electronic messages,
40 whether or not the message is converted to hard copy format after

1  receipt or is viewed upon transmission or stored for later retrieval.
2  "Electronic mail" or "e-mail" includes electronic messages that
3  are transmitted through a local, regional, or global computer
4  network.
5     (g) "Electronic mail address" or "e-mail address" means a
6  destination, commonly expressed as a string of characters, to
7  which electronic mail can be sent or delivered. An "electronic mail
8  address" or "e-mail address" consists of a user name or mailbox
9  and a reference to an Internet domain.
10    (h) "Electronic mail service provider" means any person,
11  including an Internet service provider, that is an intermediary in
12  sending or receiving electronic mail or that provides to end users
13  of the electronic mail service the ability to send or receive
14  electronic mail.
15    (i) ~~"Initiate the transmission of a commercial e-mail~~
16  ~~advertisement"~~ *"Initiate"* means to transmit or cause to be
17  transmitted a commercial e-mail advertisement or assist in the
18  transmission of a commercial e-mail advertisement by providing
19  electronic mail addresses where the advertisement may be sent, but
20  does not include the routine transmission of the advertisement
21  through the network or system of a telecommunications utility or
22  an electronic mail service provider through its network or system.
23    (j) "Incident" means a single transmission or delivery ~~by an~~
24  ~~advertiser or sender~~ to a single recipient or to multiple recipients
25  of unsolicited commercial e-mail advertisement containing
26  substantially similar content.
27    (k) "Internet" has the meaning set forth in paragraph (6) of
28  subdivision (e) of Section 17538.
29    (*l*) "Preexisting or current business relationship," as used in
30  connection with the sending of a commercial e-mail
31  advertisement, means that the recipient has made an inquiry and
32  has provided his or her e-mail address, or has made an application,
33  purchase, or transaction, with or without consideration, regarding
34  products or services offered by the ~~sender~~ *advertiser.*
35    Commercial e-mail advertisements sent pursuant to the
36  exemption provided for a preexisting or current business
37  relationship shall provide the recipient of the commercial e-mail
38  advertisement with the ability to "opt-out" from receiving further
39  commercial e-mail advertisements by calling a toll-free telephone
40  number or by sending an "unsubscribe" e-mail to the ~~sender of~~

1 *advertiser offering the products or services in* the commercial
2 e-mail advertisement. This opt-out provision does not apply to
3 recipients who are receiving free e-mail service with regard to
4 commercial e-mail advertisements sent by the provider of the
5 e-mail service.
6     (m) "Recipient" means the addressee of an unsolicited
7 commercial e-mail advertisement. If an addressee of an
8 unsolicited commercial e-mail advertisement has one or more ~~e-ail~~
9 *e-mail* addresses to which an unsolicited commercial e-mail
10 advertisement is sent, the addressee shall be deemed to be a
11 separate recipient for each e-mail address to which the e-mail
12 advertisement is sent.
13     (n) "Routine transmission" means the transmission, routing,
14 relaying, handling, or storing of an electronic mail message
15 through an automatic technical process. "Routine transmission"
16 shall not include the sending, or the knowing participation in the
17 sending, of unsolicited commercial e-mail advertisements.
18     (o) ~~"Sender" means a person or entity who initiates the~~
19 ~~transmission of an unsolicited commercial e-mail advertisement.~~
20     ~~(p)~~ "Unsolicited commercial e-mail advertisement" means a
21 commercial e-mail advertisement sent to a recipient who meets
22 both of the following criteria:
23     (1) The recipient has not provided direct consent to receive
24 advertisements from the advertiser.
25     (2) The recipient does not have a preexisting or current
26 business relationship, as defined in subdivision (*l*), with the
27 advertiser promoting the lease, sale, rental, gift offer, or other
28 disposition of any property, goods, services, or extension of credit.
29     17529.2. Notwithstanding any other provision of law, a
30 person or entity may not do ~~either~~ *any* of the following:
31     (a) Initiate or ~~send~~ *advertise in* an unsolicited commercial
32 e-mail advertisement from California or advertise in an unsolicited
33 commercial e-mail advertisement sent from California.
34     (b) Initiate or ~~send~~ *advertise in* an unsolicited commercial
35 e-mail advertisement to a California electronic mail address, or
36 advertise in an unsolicited commercial e-mail advertisement sent
37 to a California electronic mail address.
38     (c) The provisions of this section are severable. If any provision
39 of this section or its application is held invalid, that invalidity shall

1 not affect any other provision or application that can be given
2 effect without the invalid provision or application.
3    17529.3.   Nothing in this article shall be construed to limit or
4 restrict the adoption, implementation, or enforcement by a
5 provider of Internet access service of a policy of declining to
6 transmit, receive, route, relay, handle, or store certain types of
7 electronic mail messages.
8    17529.4.   (a) It is unlawful for any person or entity to collect
9 electronic mail addresses posted on the Internet if the purpose of
10 the collection is for the electronic mail addresses to be used ~~by a~~
11 ~~sender~~ to do either of the following:
12    (1) Initiate or ~~send~~ *advertise in* an unsolicited commercial
13 e-mail advertisement from California, or advertise in an
14 unsolicited   commercial   e-mail   advertisement   sent   from
15 California.
16    (2) Initiate or ~~send~~ *advertise in* an unsolicited commercial
17 e-mail advertisement to a California electronic mail address, or
18 advertise in an unsolicited commercial e-mail advertisement sent
19 to California electronic mail address.
20    (b) It is unlawful for any person or entity to use an electronic
21 mail address obtained by using automated means based on a
22 combination of names, letters, or numbers to do either of the
23 following:
24    (1) Initiate or ~~send~~ *advertise in* an unsolicited commercial
25 e-mail advertisement from California, or advertise in an
26 unsolicited   commercial   e-mail   advertisement   sent   from
27 California.
28    (2) Initiate or ~~send~~ *advertise in* an unsolicited commercial
29 e-mail advertisement to a California electronic mail address, or
30 advertise in an unsolicited commercial e-mail advertisement sent
31 to a California electronic mail address.
32    (c) It is unlawful for any person to use scripts or other
33 automated means to register for multiple electronic mail accounts
34 from which to do, or to enable another person to do, either of the
35 following:
36    (1) Initiate or ~~send~~ *advertise in* an unsolicited commercial
37 e-mail advertisement from California, or advertise in an
38 unsolicited   commercial   e-mail   advertisement   sent   from
39 California.

1   (2) Initiate or ~~send~~ *advertise in* an unsolicited commercial
2   e-mail advertisement to a California electronic mail address, or
3   advertise in an unsolicited commercial e-mail advertisement sent
4   to a California electronic mail address.
5   17529.5.   It is unlawful for any person or entity to advertise
6   using a commercial e-mail advertisement either sent from
7   California or sent to a California electronic mail address under any
8   of the following circumstances:
9   (a) The commercial e-mail advertisement contains or is
10  accompanied by a third party's domain name without the
11  permission of the third party.
12  (b) The commercial e-mail advertisement contains or is
13  accompanied by falsified, misrepresented, obscured, or forged
14  header information. This paragraph does not apply to truthful
15  information used by a third party who has been lawfully authorized
16  by the advertiser to use that information.
17  (c) The commercial e-mail advertisement has a subject line that
18  a person knows would be likely to mislead a recipient, acting
19  reasonably under the circumstances, about a material fact
20  regarding the contents or subject matter of the message.
21  17529.8.   (a) (1)  In addition to any other remedies provided
22  by this article or by any other provisions of law, a recipient of an
23  unsolicited commercial e-mail advertisement transmitted in
24  violation of this article, an electronic mail service provider, or the
25  Attorney General may bring an action against an entity that
26  violates any provision of this article to recover either or both of the
27  following:
28  (A) Actual damages.
29  (B) Liquidated damages of one thousand dollars ($1,000) for
30  each unsolicited commercial e-mail advertisement transmitted in
31  violation of Section 17529.2, up to one million dollars
32  ($1,000,000) per incident.
33  (2) The recipient, an electronic mail service provider, or the
34  Attorney General, if the prevailing plaintiff, may also recover
35  reasonable attorney's fees and costs.
36  (3) However, there shall not be a cause of action against an
37  electronic mail service provider that is only involved in the routine
38  transmission of the unsolicited commercial e-mail advertisement
39  over its computer network.

1   (b) If the court finds that the defendant established and
2   implemented, with due care, practices and procedures reasonably
3   designed to effectively prevent unsolicited commercial e-mail
4   advertisements that are in violation of this article, the court shall
5   reduce the liquidated damages recoverable under subdivision (a)
6   to a maximum of one hundred dollars ($100) for each unsolicited
7   commercial e-mail advertisement, or a maximum of one hundred
8   thousand dollars ($100,000) per incident.
9      17529.9.   The provisions of this article are severable. If any
10   provision of this article or its application is held invalid, that
11   invalidity shall not affect any other provision or application that
12   can be given effect without the invalid provision or application.
13      SEC. 2.   Section 17538.4 of the Business and Professions
14   Code is repealed.
15   ~~SEC. 3.   Section 17538.45 of the Business and Professions~~
16   ~~Code is repealed.~~
17      *SEC. 3.   Section 17538.45 of the Business and Professions*
18   *Code is amended to read:*
19      17538.45.   (a) For purposes of this section, the following
20   words have the following meanings:
21      (1) "Electronic mail advertisement" means any electronic
22   mail message, the principal purpose of which is to promote,
23   directly or indirectly, the sale or other distribution of goods or
24   services to the recipient.
25      (2) "Unsolicited electronic mail advertisement" means any
26   electronic mail advertisement that meets both of the following
27   requirements:
28      (A) It is addressed to a recipient with whom the initiator does
29   not have an existing business or personal relationship.
30      (B) It is not sent at the request of or with the express consent of
31   the recipient.
32      (3) "Electronic mail service provider" means any business or
33   organization qualified to do business in California that provides
34   registered users the ability to send or receive electronic mail
35   through equipment located in this state and that is an intermediary
36   in sending or receiving electronic mail.
37      (4) "Initiation"   of   an   unsolicited   electronic   mail
38   advertisement refers to the action by the initial sender of the
39   electronic mail advertisement. It does not refer to the actions of

1 any intervening electronic mail service provider that may handle
2 or retransmit the electronic message.
3    (5) ''Registered user'' means any individual, corporation, or
4 other entity that maintains an electronic mail address with an
5 electronic mail service provider.
6    (b) No registered user of an electronic mail service provider
7 shall use or cause to be used that electronic mail service provider's
8 equipment located in this state in violation of that electronic mail
9 service provider's policy prohibiting or restricting the use of its
10 service or equipment for the initiation of unsolicited electronic
11 mail advertisements.
12    (c) No individual, corporation, or other entity shall use or cause
13 to be used, by initiating an unsolicited electronic mail
14 advertisement, an electronic mail service provider's equipment
15 located in this state in violation of that electronic mail service
16 provider's policy prohibiting or restricting the use of its equipment
17 to deliver unsolicited electronic mail advertisements to its
18 registered users.
19    (d) An electronic mail service provider shall not be required to
20 create a policy prohibiting or restricting the use of its equipment
21 for the initiation or delivery of unsolicited electronic mail
22 advertisements.
23    (e) Nothing in this section shall be construed to limit or restrict
24 the rights of an electronic mail service provider under Section
25 230(c)(1) of Title 47 of the United States Code, or any decision of
26 an electronic mail service provider to permit or to restrict access
27 to or use of its system, or any exercise of its editorial function.
28    (f) (1) In addition to any other action available under law, any
29 electronic mail service provider whose policy on unsolicited
30 electronic mail advertisements is violated as provided in this
31 section may bring a civil action to recover the actual monetary loss
32 suffered by that provider by reason of that violation, or liquidated
33 damages of fifty dollars ($50) for each electronic mail message
34 initiated or delivered in violation of this section, up to a maximum
35 of twenty-five thousand dollars ($25,000) per day, whichever
36 amount is greater.
37    (2) In any action brought pursuant to paragraph (1), the court
38 may award reasonable attorney's fees to a prevailing party.
39    (3) (A) In any action brought pursuant to paragraph (1), the
40 electronic mail service provider shall be required to establish as an

1   element of its cause of action that prior to the alleged violation, the
2   defendant had actual notice of both of the following:
3      (i)  The electronic mail service provider's policy on unsolicited
4   electronic mail advertising.
5      (ii)  The fact that the defendant's unsolicited electronic mail
6   advertisements would use or cause to be used the electronic mail
7   service provider's equipment located in this state.
8      (B)  In this regard, the Legislature finds that with rapid
9   advances in Internet technology, and electronic mail technology in
10  particular, Internet service providers are already experimenting
11  with embedding policy statements directly into the software
12  running on the computers used to provide electronic mail services
13  in a manner that displays the policy statements every time an
14  electronic mail delivery is requested. While the state of the
15  technology does not support such a finding at present, the
16  Legislature believes that, in a given case at some future date, a
17  showing that notice was supplied via electronic means between the
18  sending and receiving computers could be held to constitute actual
19  notice to the sender for purposes of this paragraph.
20  (4)  A violation of this section shall not be subject to Section
21  17534.
22     *(4)  (A)  An electronic mail service provider who has brought an*
23  *action against a party for a violation subject to Section 17529.8*
24  *shall not bring an action against that party under this section for*
25  *the same unsolicited commercial electronic mail advertisement.*
26     *(B)  An electronic mail service provider who has brought an*
27  *action against a party for a violation of this section shall not bring*
28  *an action against that party under Section 17529.8 for the same*
29  *unsolicited commercial electronic mail advertisement.*
30     SEC. 4.   A cause of action that is in existence before the
31  effective date of this act shall not be affected by this act, but shall
32  instead be governed by the law that was in effect at the time the
33  cause of action arose.
34     SEC. 5.   No reimbursement is required by this act pursuant to
35  Section 6 of Article XIII B of the California Constitution because
36  the only costs that may be incurred by a local agency or school
37  district will be incurred because this act creates a new crime or
38  infraction, eliminates a crime or infraction, or changes the penalty
39  for a crime or infraction, within the meaning of Section 17556 of
40  the Government Code, or changes the definition of a crime within

— 13 —                              SB  186

1 the meaning of Section 6 of Article XIII B of the California
2 Constitution.

O

**EXHIBIT J**

**SENATE BILL**                                    **No. 1457**

## Introduced by Senator Murray

### February 19, 2004

An act to amend Sections 17529.1, 17529.5, and 17529.8 of the Business and Professions Code, relating to business.

LEGISLATIVE COUNSEL'S DIGEST

SB 1457, as introduced, Murray. Commercial e-mail advertisements.

Existing state law prohibits a person or entity from collecting e-mail addresses or registering multiple e-mail addresses for purposes of the initiation or advertisement in an unsolicited commercial e-mail advertisement sent from California or to a California e-mail address. Existing state law also prohibits a person or entity from advertising in a commercial e-mail advertisement that is sent either from California or to a California e-mail address if the e-mail contains or is accompanied by certain falsified, misrepresented, obscured, or misleading information. Existing state law authorizes the recipient of an unsolicited commercial e-mail advertisement transmitted in violation of these prohibitions, the e-mail service provider, or the Attorney General to bring an action to recover actual damages, and authorizes a court to award reasonable attorney's fees and costs to a prevailing plaintiff. A violation of the provisions governing advertising is a misdemeanor.

This bill would define commercial e-mail advertisements to include both solicited and unsolicited advertisements. The bill would prohibit a person or entity from initiating or advertising in a commercial e-mail advertisement either sent from California or sent to a California e-mail address if the e-mail or an attachment to the e-mail contains or is accompanied by any false, misrepresented, obscured, forged, or

**SB  1457**                          **— 2 —**

misleading information. The bill would also prohibit a commercial e-mail advertisement sent from California or to a California e-mail address, or an attachment thereto, from containing a statement that includes deceptive information regarding the authorization by the recipient to send commercial e-mail advertisements or regarding opting out of receiving future commercial e-mail advertisements. This bill would authorize the recipient of an e-mail advertisement transmitted in violation of any of the above provisions, the e-mail service provider, or the Attorney General to bring an action to recover actual damages and liquidated damages of $1,000 per e-mail advertisement transmitted in violation of the provisions, up to $1,000,000 per incident, subject to reduction by the court, and would authorize the award of reasonable attorney's fees and costs to a prevailing plaintiff.

Because a violation of the bill would be a crime, it would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1    SECTION 1.   Section 17529.1 of the Business and Professions
2  Code is amended to read:
3    17529.1.   For the purpose of this article, the following
4  definitions apply:
5    (a)  "Advertiser" means a person or entity that advertises
6  through the use of commercial e-mail advertisements.
7    (b)  "California electronic mail address" or "California e-mail
8  address" means any of the following:
9    (1)  An e-mail address furnished by an electronic mail service
10  provider that sends bills for furnishing and maintaining that e-mail
11  address to a mailing address in this state.
12    (2)  An e-mail address ordinarily accessed from a computer
13  located in this state.
14    (3)  An e-mail address furnished to a resident of this state.

— 3 —                              SB 1457

1  (c) "Commercial e-mail advertisement" means any electronic
2  mail message, *whether solicited or unsolicited, that is* initiated for
3  the purpose of advertising or promoting the lease, sale, rental, gift
4  offer, or other disposition of any property, goods, services, or
5  extension of credit.
6  (d) "Direct consent" means that the recipient has expressly
7  consented to receive e-mail advertisements from the advertiser,
8  either in response to a clear and conspicuous request for the
9  consent or at the recipient's own initiative.
10  (e) "Domain name" means any alphanumeric designation that
11  is registered with or assigned by any domain name registrar as part
12  of an electronic address on the Internet.
13  (f) "Electronic mail" or "e-mail" means an electronic
14  message that is sent to an e-mail address and transmitted between
15  two or more telecommunications devices, computers, or
16  electronic devices capable of receiving electronic messages,
17  whether or not the message is converted to hard copy format after
18  receipt or is viewed upon transmission or stored for later retrieval.
19  "Electronic mail" or "e-mail" includes electronic messages that
20  are transmitted through a local, regional, or global computer
21  network.
22  (g) "Electronic mail address" or "e-mail address" means a
23  destination, commonly expressed as a string of characters, to
24  which electronic mail can be sent or delivered. An "electronic mail
25  address" or "e-mail address" consists of a user name or mailbox
26  and a reference to an Internet domain.
27  (h) "Electronic mail service provider" means any person,
28  including an Internet service provider, that is an intermediary in
29  sending or receiving electronic mail or that provides to end users
30  of the electronic mail service the ability to send or receive
31  electronic mail.
32  (i) "Initiate" means to transmit or cause to be transmitted a
33  commercial e-mail advertisement or assist in the transmission of
34  a commercial e-mail advertisement by providing electronic mail
35  addresses where the advertisement may be sent, but does not
36  include the routine transmission of the advertisement through the
37  network or system of a telecommunications utility or an electronic
38  mail service provider through its network or system.
39  (j) "Incident" means a single transmission or delivery to a
40  single recipient or to multiple recipients of ~~unsolicited~~ *a*

SB 1457 — 4 —

1 commercial e-mail advertisement containing substantially similar
2 content.
3    (k) "Internet" has the meaning set forth in paragraph (6) of
4 subdivision (e) of Section 17538.
5    (*l*) "Preexisting or current business relationship," as used in
6 connection with the sending of a commercial e-mail
7 advertisement, means that the recipient has made an inquiry and
8 has provided his or her e-mail address, or has made an application,
9 purchase, or transaction, with or without consideration, regarding
10 products or services offered by the advertiser.
11    Commercial e-mail advertisements sent pursuant to the
12 exemption provided for a preexisting or current business
13 relationship shall provide the recipient of the commercial e-mail
14 advertisement with the ability to "opt-out" from receiving further
15 commercial e-mail advertisements by calling a toll-free telephone
16 number or by sending an "unsubscribe" e-mail to the advertiser
17 offering the products or services in the commercial e-mail
18 advertisement. This opt-out provision does not apply to recipients
19 who are receiving free e-mail service with regard to commercial
20 e-mail advertisements sent by the provider of the e-mail service.
21    (m) "Recipient" means the addressee of ~~an unsolicited~~ *a*
22 commercial e-mail advertisement. If an addressee of ~~an~~
23 ~~unsolicited~~ *a* commercial e-mail advertisement has one or more
24 e-mail addresses to which ~~an unsolicited~~ *a* commercial e-mail
25 advertisement is sent, the addressee shall be deemed to be a
26 separate recipient for each e-mail address to which the e-mail
27 advertisement is sent.
28    (n) "Routine transmission" means the transmission, routing,
29 relaying, handling, or storing of an electronic mail message
30 through an automatic technical process. "Routine transmission"
31 shall not include the sending, or the knowing participation in the
32 sending, of ~~unsolicited~~ commercial e-mail advertisements.
33    (o) "Unsolicited commercial e-mail advertisement" means a
34 commercial e-mail advertisement sent to a recipient who meets
35 both of the following criteria:
36    (1) The recipient has not provided direct consent to receive
37 advertisements from the advertiser.
38    (2) The recipient does not have a preexisting or current
39 business relationship, as defined in subdivision (*l*), with the

1  advertiser promoting the lease, sale, rental, gift offer, or other
2  disposition of any property, goods, services, or extension of credit.
3      SEC. 2.   Section 17529.5 of the Business and Professions
4  Code is amended to read:
5      17529.5.   It is unlawful for any person or entity to *initiate or*
6  advertise ~~using~~ *in* a commercial e-mail advertisement either sent
7  from California or sent to a California electronic mail address
8  under any of the following circumstances:
9      (a) The ~~commercial~~ e-mail advertisement contains or is
10 accompanied by a third party's domain name without the
11 permission of the third party.
12     (b) The ~~commercial~~ e-mail advertisement contains or is
13 accompanied by falsified, misrepresented, obscured, or forged
14 header information. This ~~paragraph~~ *subdivision* does not apply to
15 truthful information used by a ~~third party~~ *third-party* who has been
16 lawfully authorized by the advertiser to use that information.
17     (c) The ~~commercial~~ e-mail advertisement has a subject line that
18 a person knows would be likely to mislead a recipient, acting
19 reasonably under the circumstances, about a material fact
20 regarding the contents or subject matter of the message.
21     *(d) The e-mail advertisement, or an attachment to the*
22 *advertisement, contains or is accompanied by false,*
23 *misrepresented, obscured, forged, or misleading information.*
24     *(e) The e-mail advertisement, or an attachment to the*
25 *advertisement, is accompanied by a statement that includes*
26 *deceptive information regarding either:*
27     *(1) Authorization by the recipient to send commercial e-mail*
28 *advertisements to that recipient.*
29     *(2) Opting out of receiving future commercial e-mail*
30 *advertisements.*
31     SEC. 3.   Section 17529.8 of the Business and Professions
32 Code is amended to read:
33     17529.8.   (a) (1)  In addition to any other remedies provided
34 by this article or by any other provisions of law, a recipient of an
35 ~~unsolicited~~ ~~commercial~~ e-mail advertisement transmitted in
36 violation of this article, an electronic mail service provider, or the
37 Attorney General may bring an action against an entity that
38 violates any provision of this article to recover either or both of the
39 following:
40     (A)  Actual damages.

SB 1457                        — 6 —

1     (B) Liquidated damages of one thousand dollars ($1,000) for
2  each ~~unsolicited commercial~~ e-mail advertisement transmitted in
3  violation of ~~Section 17529.2~~ *this article*, up to one million dollars
4  ($1,000,000) per incident.
5     (2) The recipient, an electronic mail service provider, or the
6  Attorney General, if the prevailing plaintiff, may also recover
7  reasonable attorney's fees and costs.
8     (3) However, there shall not be a cause of action against an
9  electronic mail service provider that is only involved in the routine
10 transmission of the ~~unsolicited commercial~~ e-mail advertisement
11 over its computer network.
12    (b) If the court finds that the defendant established and
13 implemented, with due care, practices and procedures reasonably
14 designed to effectively prevent ~~unsolicited commercial~~ e-mail
15 advertisements that are in violation of this article, the court shall
16 reduce the liquidated damages recoverable under subdivision (a)
17 to a maximum of one hundred dollars ($100) for each ~~unsolicited~~
18 ~~commercial~~ e-mail advertisement, or a maximum of one hundred
19 thousand dollars ($100,000) per incident.
20    SEC. 4.   No reimbursement is required by this act pursuant to
21 Section 6 of Article XIII B of the California Constitution because
22 the only costs that may be incurred by a local agency or school
23 district will be incurred because this act creates a new crime or
24 infraction, eliminates a crime or infraction, or changes the penalty
25 for a crime or infraction, within the meaning of Section 17556 of
26 the Government Code, or changes the definition of a crime within
27 the meaning of Section 6 of Article XIII B of the California
28 Constitution.

O

**EXHIBIT K**

SB 1457
Page 1

Date of Hearing:  June 22, 2004

ASSEMBLY COMMITTEE ON JUDICIARY
Ellen M. Corbett, Chair
SB 1457 (Murray) - As Amended:  June 17, 2004

 SENATE VOTE  :  22-5

 SUBJECT  :  ~~COMMERCIAL E~~ EMAIL "SPAM":  FEDERAL COMFORMITY

 KEY ISSUE  : SHOULD RECENT STATE LAW BANNING E-MAIL SPAM BE
UPDATED?

SYNOPSIS

The bill was recently amended in the Business and Professions
Committee to address various technical drafting concerns and
clarify that the penalties contained in state law apply to all
falsified email -- whether solicited or unsolicited.  The latest
amendments strike changes to existing law with the exception of
deleting the word "obscured" in Section 17529.5 (b) of the
measure.  With the latest amendments the bill mirrors the
penalty provisions of Section 17529.8, and creates a "stand
alone" section for falsified emails, including penalties, to
avoid confusion as to what parts of existing state law are
preempted by federal law and what parts remain viable in this
area.  In support of the bill, the author states that the
measure is intended to merely provide clean-up language, and
ensure that the private right of action against "spammers" who
use falsified headers, which was created in his legislation last
year and is not in conflict with federal law, remains intact.
The bill was recently amended and passed in the Business and
Professions Committee, and the California Bankers Association
and the American Insurance Association are opposed to the bill.


 SUMMARY:   Provides clean-up language and ensure a private right
of action against spammers who use falsified headers, which is
not in conflict with federal law.
Specifically,  this bill  :

2)Deletes the word "obscured" from existing law pertaining to
   commercial e-mails.

3)Mirrors the penalty provisions of Section 17529.8, and creates

SB 1457
Page 2

a "stand alone" section for falsified emails, including

penalties, to avoid confusion as to what parts of existing
state law are preempted by federal law and what parts remain
viable in this area.  The penalties allow the e-mail service
provider, or the Attorney General, to bring an action to
recover damages of $1,000 for each unsolicited e-mail (up to
$1 million per incident).  Also authorizes a court to award
reasonable attorney's fees and costs to a prevailing plaintiff
in violation of this section.

 EXISTING LAW  :

1)Regulates false and misleading advertising and subjects
  violators to both civil and criminal penalties.

5)Prohibits a person or entity from advertising using a
  commercial e-mail advertisement either sent from California or
  to a California e-mail address under any of the following
  circumstances:

   5)   The advertisement contains or is accompanied by a third
     party's domain name without the permission of the third
     party;

   5)   The advertisement contains or is accompanied by
     falsified, misrepresented, obscured, or forged information;
     or,

   5)   The advertisement has a subject line that a person knows
     would likely mislead a recipient about a material fact
     regarding the contents or subject matter.

 Existing federal law  :

1)Applies to all commercial e-mail with the exception of
  specific transactional messages like warranty, product recall,
  or confirmation of transaction information.

2)Requires that commercial e-mail be labeled, have a valid
  return address, and a physical address.

3)Requires that e-mailers allow recipients to opt out of
  receiving further commercial e-mail and provides senders 10
  business days to process opt out requests.

                                                    SB 1457
                                                    Page 3

4)Prohibits the use of deceptive subject lines and false headers
  in such messages.

5)Prohibits harvesting e-mail addresses from web sites.

6)Provides criminal penalties for fraudulent headers and using
  other people's e-mail accounts or computers to send commercial
  e-mail, including fines and imprisonment up to 5 years.

7)Includes civil enforcement by the Federal Trade Commission

(FTC), state Attorneys General, or Internet Service Providers
(ISPs), including actual damages and statutory damages up to
$250 per e-mail, with a cap of $2 million per incident, or $6
million if the violation of the law is willful.

8)Preempts any state law that regulates the use of e-mail to
   send commercial messages but allows state laws that address
   falsity and deception to remain in place.

 FISCAL EFFECT  :  As currently in print this bill is keyed fiscal.

 COMMENTS  :  In support of the bill, the author states that the
measure is intended to merely provide clean-up language, and
ensure that the private right of action against "spammers" who
use falsified headers, which was created in his legislation last
year and is not in conflict with federal law, remains intact.
The bill was recently amended and passed in the Business and
Professions Committee, but opposition remains.

Last year, SB 186 (Murray), Chapter 487, Statutes of 2003,
completely banned the sending of e-mail spam in California.  To
enforce this ban, SB 186 created a private right of action
whereby a consumer or an ISP could sue spammers and recover
damages.  At the time, SB 186 was the strongest anti-spam
legislation in the country as it offered a complete ban with
penalties of $1,000 per e-mail, up to $1 million per incident.
SB 186 was unique in that it also held the "advertiser" liable.
This was meant to ensure that a money trail could be traced and
violators easily located.  Previous anti-spam laws focused
solely on the spammers, who can often be impossible to trace.

Within months of passage, SB 186 was preempted by a federal bill
(S. 877), which allows for the sending of spam as long as
various conditions are met.  These conditions include having the
ability to opt-out, a valid e-mail address contact and

                                          SB 1457
_____ Page 4

disclosure of the name and location of the sender of the spam.
Although this federal measure preempted California's complete
prohibition of spam, it did not preempt the private right of
action consumers and ISPs have against those who send spam with
misleading or falsified headers and information, as well as the
advertisers of those products.  SB 1457 is intended to merely
provide clean-up language and ensure a private right of action
against spammers who use falsified headers, which is not in
conflict with federal law.

 Recent Author's Amendments  :  As noted above, the bill was
recently amended in the Business and Professions Committee to
address various technical drafting concerns and clarify that the
penalties contained in state law apply to all falsified email --
whether solicited or unsolicited.  The latest amendments strike
changes to existing law with the exception of deleting the word
"obscured" in Section 17529.5 (b) of the measure.  With the
latest amendments the bill seeks to mirror the penalty
provisions of Section 17529.8, and creates a "stand alone"

section for falsified emails, including penalties, to avoid
confusion as to what parts of existing state law are preempted
by federal law and what parts remain viable in this area.

ARGUMENTS IN OPPOSITION : Both the California Bankers
Association (CBA) and the American Insurance Association (AIA)
are opposed to the bill unless amended to clarify that the
inclusion of advertisements or hyperlinks with a communication
sent as a routine e-mail by a business to someone whom the
business has an existing relationship does not constitute a
violation.  CBA is concerned that "the bill goes beyond 'spam'
and effects normal electronic communications between a business
and its customers."  AIA states:

> We don't object to these penalties applying to solicited
> e-mails for either of the first two prohibited acts - use
> of a false domain name or falsification of a header.  We do
> object, however, to applying the penalties to the third act
> - use of a subject line likely to "mislead" the recipient
> regarding the contents.  Applying these penalties to the
> actions described in the third prohibition could lead to
> litigation regarding routine e-mail communications between
> businesses and their existing customers.

 LIKELY AUTHOR'S AMENDMENTS TO ADDRESS BANKERS' CONCERNS : The
author's _ office has informed Committee staff that they are in

SB 1457
Page 5

communication with the California Bankers Association to try to
further refine the bill to permit legitimate businesses that
offer advertisements in their emails not to fall within the
measure's penalty provisions.  The author states it is not his
intent to penalize legitimate business for email advertisements
that are within their normal course of correspondence.  The
author's office further states that this bill is intended to
deal with "truly falsified, misleading and deceptive spammers,
not legitimate business communications with customers."

REGISTERED SUPPORT / OPPOSITION :

 Support

None on file

Opposition

American Insurance Association
California Bankers Association (oppose unless amended)
_

Analysis Prepared by :  Drew Liebert / JUD. / (916) 319-2334

**EXHIBIT L**

AMENDED IN ASSEMBLY AUGUST 5, 2004

AMENDED IN ASSEMBLY JUNE 17, 2004

AMENDED IN ASSEMBLY JUNE 9, 2004

# SENATE BILL                                    No. 1457

**Introduced by Senator Murray**

February 19, 2004

An act to amend Section 17529.5 of the Business and Professions Code, relating to business.

LEGISLATIVE COUNSEL'S DIGEST

SB 1457, as amended, Murray. Commercial e-mail advertisements.

Existing state law prohibits a person or entity from ~~collecting e-mail addresses or registering multiple e-mail addresses for purposes of the initiation or advertisement in an unsolicited commercial e-mail advertisement sent from California or to a California e-mail address. Existing state law also prohibits a person or entity from~~ advertising in a commercial e-mail advertisement that is sent either from California or to a California e-mail address if the e-mail contains or is accompanied by a 3rd-party's domain name without permission ~~or with~~ *, contains or is accompanied by* falsified, misrepresented, obscured, or forged header information, or ~~if the e-mail~~ has a misleading subject line. Existing state law authorizes the recipient of an unsolicited commercial e-mail advertisement transmitted in violation of these prohibitions, ~~the~~ *an* e-mail service provider, or the Attorney General to bring an action to recover actual damages *for a violation of this prohibition*, and authorizes a court to award reasonable attorney's fees and costs ~~to~~ *if they*

96

*are* a prevailing plaintiff. ~~A violation of the provisions governing advertising is a misdemeanor.~~

This bill would delete the prohibition against obscured header information. The bill would authorize *the Attorney General, an e-mail service provider, or* the recipient of an *unsolicited commercial* e-mail advertisement transmitted in violation of these provisions, ~~the e-mail service provider, or the Attorney General~~ to bring an action to recover ~~actual damages and~~ liquidated damages of $1,000 per *unsolicited commercial* e-mail advertisement transmitted in violation of the provisions, up to $1,000,000 per incident, subject to reduction by the court~~, and would authorize the award of reasonable attorney's fees and costs to a prevailing plaintiff~~. The bill would prohibit ~~an action from being brought under both this damages provision and other existing~~ *the bringing of multiple actions under different* damages provisions relating to e-mail advertisements for the same ~~e-mail transmission~~ *violation.*

~~Because a violation of the bill would be a crime, it would impose a state-mandated local program.~~

~~The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.~~

~~This bill would provide that no reimbursement is required by this act for a specified reason.~~

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: ~~yes~~ *no.*

*The people of the State of California do enact as follows:*

1  SECTION 1.  Section 17529.5 of the Business and Professions
2  Code is amended to read:
3   17529.5.  (a) It is unlawful for any person or entity to ~~initiate~~
4  ~~or~~ advertise in a commercial e-mail advertisement either sent from
5  California or sent to a California electronic mail address under any
6  of the following circumstances:
7   (1) The e-mail advertisement contains or is accompanied by a
8  third-party's domain name without the permission of the third
9  party.
10   (2) The e-mail advertisement contains or is accompanied by
11  falsified, misrepresented, or forged header information. This

1  ~~subdivision~~ *paragraph* does not apply to truthful information used
2  by a third party who has been lawfully authorized by the advertiser
3  to use that information.
4      (3)  The e-mail advertisement has a subject line that a person
5  knows would be likely to mislead a recipient, acting reasonably
6  under the circumstances, about a material fact regarding the
7  contents or subject matter of the message.
8      ~~(b)  (1)  (A)  A recipient of an e-mail advertisement transmitted~~
9  ~~in violation of this section, an electronic mail service provider, or~~
10 ~~the Attorney General may bring an action against an entity that~~
11 ~~violates any provision of this section to recover either or both of~~
12     *(b)  (1)  (A)  In addition to any other remedies provided by any*
13 *other provision of law, the following may bring an action against*
14 *a person or entity that violates any provision of this section:*
15     *(i)  The Attorney General.*
16     *(ii)  An electronic mail service provider.*
17     *(iii)  A  recipient  of  an  unsolicited  commercial  e-mail*
18 *advertisement, as defined in Section 17529.1.*
19     *(B)  A  person  or  entity  bringing  an  action  pursuant  to*
20 *subparagraph (A) may recover either or both of* the following:
21     (i)  Actual damages.
22     (ii)  Liquidated damages of one thousand dollars ($1,000) for
23 each *unsolicited commercial* e-mail advertisement transmitted in
24 violation of this section, up to one million dollars ($1,000,000) per
25 incident.
26     ~~(B)~~
27     *(C)*  The recipient, an electronic mail service provider, or the
28 Attorney General, if the prevailing plaintiff, may also recover
29 reasonable attorney's fees and costs.
30     ~~(C)~~
31     *(D)*  However, there shall not be a cause of action under this
32 section against an electronic mail service provider that is only
33 involved in the routine transmission of the e-mail advertisement
34 over its computer network.
35     (2)  If the court finds that the defendant established and
36 implemented, with due care, practices and procedures reasonably
37 designed to effectively prevent *unsolicited commercial* e-mail
38 advertisements that are in violation of this section, the court shall
39 reduce the liquidated damages recoverable under paragraph (1) to
40 a maximum of one hundred dollars ($100) for each *unsolicited*

SB 1457 — 4 —

1  *commercial* e-mail advertisement, or a maximum of one hundred
2  thousand dollars ($100,000) per incident.
3     (3) (A)  A person who has brought an action against a party ~~for~~
4  ~~a violation of~~ *under* this section shall not bring an action against
5  that party under Section 17529.8 or 17538.45 for the same
6  commercial e-mail advertisement, as defined in subdivision (c) of
7  Section 17529.1.
8     (B)  A person who has brought an action against a party ~~for a~~
9  ~~violation of~~ *under* Section 17529.8 or 17538.45 shall not bring an
10  action against that party under this section for the same
11  commercial e-mail advertisement, as defined in subdivision (c) of
12  Section 17529.1.
13     SEC. 2.   No reimbursement is required by this act pursuant to
14  Section 6 of Article XIII B of the California Constitution because
15  the only costs that may be incurred by a local agency or school
16  district will be incurred because this act creates a new crime or
17  infraction, eliminates a crime or infraction, or changes the penalty
18  for a crime or infraction, within the meaning of Section 17556 of
19  the Government Code, or changes the definition of a crime within
20  the meaning of Section 6 of Article XIII B of the California
21  Constitution.

O

**EXHIBIT M**

## Senate Bill No. 1457

## CHAPTER 571

An act to amend Section 17529.5 of the Business and Professions Code, relating to business.

[Approved by Governor September 17, 2004. Filed
with Secretary of State September 17, 2004.]

LEGISLATIVE COUNSEL'S DIGEST

SB 1457, Murray.   Commercial e-mail advertisements.

Existing state law prohibits a person or entity from advertising in a commercial e-mail advertisement that is sent either from California or to a California e-mail address if the e-mail contains or is accompanied by a 3rd-party's domain name without permission, contains or is accompanied by falsified, misrepresented, obscured, or forged header information, or has a misleading subject line. Existing state law authorizes the recipient of an unsolicited commercial e-mail advertisement transmitted in violation of these prohibitions, an e-mail service provider, or the Attorney General to bring an action to recover actual damages for a violation of this prohibition, and authorizes a court to award reasonable attorney's fees and costs if they are a prevailing plaintiff.

This bill would delete the prohibition against obscured header information. The bill would authorize the Attorney General, an e-mail service provider, or the recipient of an unsolicited commercial e-mail advertisement transmitted in violation of these provisions to bring an action to recover liquidated damages of $1,000 per unsolicited commercial e-mail advertisement transmitted in violation of the provisions, up to $1,000,000 per incident, subject to reduction by the court. The bill would prohibit the bringing of multiple actions under different damages provisions relating to e-mail advertisements for the same violation.

*The people of the State of California do enact as follows:*

SECTION 1.   Section 17529.5 of the Business and Professions Code is amended to read:

17529.5.   (a) It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:

94

(1)  The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.

(2)  The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.

(3)  The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

(b)  (1)  (A)  In addition to any other remedies provided by any other provision of law, the following may bring an action against a person or entity that violates any provision of this section:

(i)  The Attorney General.

(ii)  An electronic mail service provider.

(iii)  A recipient of an unsolicited commercial e-mail advertisement, as defined in Section 17529.1.

(B)  A person or entity bringing an action pursuant to subparagraph (A) may recover either or both of the following:

(i)  Actual damages.

(ii)  Liquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section, up to one million dollars ($1,000,000) per incident.

(C)  The recipient, an electronic mail service provider, or the Attorney General, if the prevailing plaintiff, may also recover reasonable attorney's fees and costs.

(D)  However, there shall not be a cause of action under this section against an electronic mail service provider that is only involved in the routine transmission of the e-mail advertisement over its computer network.

(2)  If the court finds that the defendant established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of this section, the court shall reduce the liquidated damages recoverable under paragraph (1) to a maximum of one hundred dollars ($100) for each unsolicited commercial e-mail advertisement, or a maximum of one hundred thousand dollars ($100,000) per incident.

(3)  (A)  A person who has brought an action against a party under this section shall not bring an action against that party under Section 17529.8 or 17538.45 for the same commercial e-mail advertisement, as defined in subdivision (c) of Section 17529.1.

(B)  A person who has brought an action against a party under Section 17529.8 or 17538.45 shall not bring an action against that party under

this section for the same commercial e-mail advertisement, as defined in subdivision (c) of Section 17529.1.

SEC. 2.   No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

O

# EXHIBIT N

```
--------------------------------------------------------
|SENATE RULES COMMITTEE         |              SB 186|
|Office of Senate Floor Analyses|                    |
|1020 N Street, Suite 524       |                    |
|(916) 445-6614       Fax: (916)|                    |
|327-4478                       |                    |
--------------------------------------------------------
```

_

_____

UNFINISHED BUSINESS


Bill No:  SB 186
Author:   Murray (D), et al
Amended:  9/5/03
Vote:     21


 SENATE BUSINESS & PROFESSIONS COMMITTEE  :  6-0, 4/28/03
AYES: Figueroa, Aanestad, Brulte, Cedillo, Machado, Murray
NOTE RECORDED:  Vincent

 SENATE APPROPRIATIONS COMMITTEE :  Senate Rule 28.8

 SENATE FLOOR   :  24-12, 6/2/03
AYES:  Aanestad, Alarcon, Alpert, Brulte, Burton, Cedillo,
  Chesbro, Ducheny, Dunn, Figueroa, Florez, Karnette,
  Kuehl, Machado, Murray, Ortiz, Perata, Romero, Scott,
  Sher, Soto, Speier, Torlakson, Vincent
NOES:  Ackerman, Ashburn, Denham, Hollingsworth, Johnson,
  Knight, Margett, McClintock, McPherson, Morrow, Oller,
  Poochigian
NO VOTE RECORDED:  Battin, Bowen, Escutia, Vasconcellos

 ASSEMBLY FLOOR   :  71-7, 9/8/03 - See last page for vote


 SUBJECT   :   Electronic mail advertising

 SOURCE   :    Author


 DIGEST   :   This bill clarifies current law and creates
avenues to sue advertisers for unsolicited e-mail (spam).
The bill creates a cause of action for the consumer, the
e-mail service provider, or the Attorney general, to sue
                                         CONTINUED


                                          SB 186
                                          Page
_____
2

for violations of this bill's restrictions and

prohibitions.

 Assembly Amendments  make various changes, including: _

1. Including provisions that prohibit a person or entity
   from collecting or registering e-mail addresses for the
   purpose of advertising in an unsolicited commercial
   e-mail advertisement from California or to a California
   e-mail address.

2. Including a provision that prohibits a person or entity
   from using a commercial e-mail advertisement containing
   certain falsified, misrepresented, obscured, or
   misleading information.

3. Revising provisions relating to the recovery of damages.

4. Prohibiting an e-mail service provider from bringing an
   action under both this provision and other provisions
   being added by the bill for the same unsolicited e-mail
   advertisements.

 ANALYSIS  :

This bill:

1. Authorizes a recipient, an e-mail service provider, or
   the Attorney General to bring an action to recover
   actual damages, and/or liquidated damages of $1,000 per
   unsolicited commercial e-mail, up to $1 million per
   incident, as defined.  Provides for an award of
   reasonable attorney's fees and costs to a prevailing
   plaintiff.

2. Provides that if the court finds that the defendant
   establishes and implemented with due care, practices and
   procedures reasonably designed to effectively prevent
   unsolicited commercial e-mail advertisements, the court
   shall reduce the liquidated damages to a maximum of $100
   for each unsolicited, or a maximum of $100,000 per
   incident.

3. Establishments that commercial e-mail ads sent pursuant

                                               SB 186
                                               Page
          3

to the exemption provided for a "preexisting or current
business relationship" shall provide the recipient with
the ability to "opt-out" from receiving further
commercial e-mail ads by calling a toll-free telephone
number or by sending an "unsubscribe" e-mail to the
advertiser offering the products or services in the
commercial e-mail ad.  This "opt-out" provision does not
apply to recipients who are receiving free e-mail
service with regard to commercial e-mail ads sent by the
provider of the e-mail service.

4. Defines "preexisting or current business relationship,"
   as used in connection with the sending of a commercial
   e-mail ad, to mean that the recipient has made an
   inquiry, and has provides his or her e-mail address, or
   has made an application, purchase, or transaction, with
   or without consideration, regarding products or services
   offered by the advertiser.

5. Establishes that it is unlawful for any person or entity
   to advertise using a commercial e-mail ad either sent
   form California or sent to a California e-mail address
   under any of the following circumstances:

   A.    The commercial e-mail ad contains or is
         accompanied by a third party's domain name without
         the permission of the third party

   B.    The commercial e-mail ad contains or is
         accompanied by falsified, misrepresented, obscured,
         or forged header information.

   C.    The commercial e-mail ad has a subject line that a
         person knows will likely mislead a recipient, acting
         reasonably under the circumstances, about a material
         fact regarding the contents or subject matter of the
         message.

6. Prohibits any person or entity from collecting e-mail
   addresses on the Internet for the purpose of using the
   addresses to initiate or advertise in unsolicited
   commercial e-mail.

7. Prohibits any person or entity from using an e-mail

SB 186
Page
_____
         4

   address obtained by automated means based on a
   combination of names, letters, or numbers, in order to
   initiate or advertise in unsolicited commercial e-mail.

8. Prohibits any person from using scripts or other
   automated means to register for multiple e-mail accounts
   in order to initiate or advertise in unsolicited
   commercial e-mail.

9. Provides that the provisions of this bill shall not be
   construed to limit or restrict the adoption,
   implementation, or enforcement by a provider of Internet
   access service of a policy of declining to transmit,
   receive, route, relay, handle, or store certain types of
   electronic messages.

10. Provides that if an electronic mail service provider
    brings an action against a party for violation of the
    provider's policy prohibiting or restricting the use of
    its equipment related to unsolicited commercial e-mails
    (pursuant to Business and Professions Code Section

17538.45), that electronic mail service provider may not bring an additional action under the penalty provisions created by this bill (pursuant to Business and Professions Code Section 17529.8) for the same violation.  Conversely, if an action is brought under the penalty provisions of this bill, an additional action may not be brought under Business and Professions Code Section 17538.45 for the same violation.

 Rationale  .  This bill addresses the proliferation of e-mail spam by clarifying current law and creating avenues to sue advertisers for unsolicited mail.

 Background  .  Spam has received increased attention from both the state and federal governments because of the dramatic increase and associated loss of productivity in recent years.

According to a national technology research firm, spam will cost American businesses over 10 billion in 2003.  Spam impacts individuals, businesses and government due to the time and effort required to filter out unsolicited e-mal and work interruptions required to process unwanted e-mail.

                                                        SB 186
                                                         Page
_____
            5

Current law regulates misleading advertising and subjects violators to both civil and criminal penalties and prohibits unsolicited e-mail unless it contains either a toll free number or a return e-mail address which the recipient can use to notify the sender to stop sending spam.

 Related Legislation

 SB 12 (Bowen), 2003-04 Session  .  Also addressed the proliferation of e-mail spam.  The provisions of this SB 12 were broader than this bill.  (Died in Senate Business and Professions Committee)

 AB 567 (Simitian), 2003-04 Session  .  Authorized recipient of unsolicited e-mail advertisements to bring an action for recovery of actual damages or $1,000, whichever is greater, for each violation.  The bill was never set for hearing in the Senate Business and Professions Committee.

 AB 1676 (Bowen), Chapter 865, Statutes of 1998  .  Requires unsolicited commerical e-mail to contain an "ADV" or "ADV:ADLT" label in the subject line of the message.

 FISCAL EFFECT  :   Appropriation:  No   Fiscal Com.:  Yes   Local:  Yes

According to the Assembly Appropriations Committee, minor, absorbable workload to the State Department of Justice, as enforcement authority is discretionary.

 SUPPORT  :  (Verified  9/5/03)

Consumer Union
County of Los Angeles
Privacy Rights Clearinghouse
Microsoft
Mountain View Chamber of Commerce
Atlas Broadband
Spot Inter Works
California Prosecutors Association
CalWeb Internet Services
Computer Stuff

                                                   SB 186
                                                   Page
 _____
            6

Leading Edge
Apple One
Consumer Action


 ASSEMBLY FLOOR  :
AYES:  Aghazarian, Bates, Benoit, Berg, Bermudez, Bogh,
  Calderon, Canciamilla, Chan, Chavez, Chu, Cohn, Corbett,
  Correa, Cox, Daucher, Diaz, Dutra, Dutton, Dymally,
  Frommer, Garcia, Goldberg, Hancock, Harman, Jerome
  Horton, Shirley Horton, Houston, Jackson, Keene, Kehoe,
  Koretz, Laird, Leno, Leslie, Levine, Lieber, Liu,
  Longville, Lowenthal, Maddox, Maldonado, Matthews, Maze,
  McCarthy, Montanez, Mullin, Nakanishi, Nakano, Nation,
  Negrete McLeod, Nunez, Oropeza, Pacheco, Parra, Pavley,
  Plescia, Reyes, Richman, Ridley-Thomas, Salinas,
  Simitian, Spitzer, Steinberg, Strickland, Vargas,
  Wiggins, Wolk, Wyland, Yee, Wesson
NOES:  Campbell, Cogdill, Haynes, La Malfa, La Suer,
  Mountjoy, Samuelian


CP:cm  9/9/03   Senate Floor Analyses

             SUPPORT/OPPOSITION:  SEE ABOVE

             ****  END  ****

Case 3:17-cv-04497-MMC   Document 28-1   Filed 09/01/17   Page 121 of 133

**EXHIBIT O**

```
                                                         SB 186
                                                         Page  1
```

SENATE THIRD READING
SB 186 (Murray)
As Amended September 5, 2003
Majority vote

SENATE VOTE  :Vote not relevant

JUDICIARY              11-1              BUSINESS AND
PROFESSIONS   13-0

| Ayes: | Corbett, Harman, Dutra, Hancock, Jackson, Lieber, Longville, Montanez, Spitzer, Steinberg, Berg | Ayes: | Correa, Shirley Horton, Aghazarian, Bermudez, Corbett, Koretz, Leno, Maldonado, Maze, Nation, Vargas, Wyland, Yee |
|-------|--------------------------------|-------|--------------------------------|
| Nays: | Pacheco | | |

APPROPRIATIONS        18-3

| Ayes: | Steinberg, Bates, Berg, Calderon, Corbett, Correa, Diaz, Goldberg, Leno, Maldonado, Nation, Negrete McLeod, Nunez, Pavley, Ridley-Thomas, Simitian, Wiggins, Yee | | |
|-------|--------------------------------|---|---|
| Nays: | Haynes, Pacheco, Samuelian | | |

SUMMARY  :  Modifies current law that allows the recipient of
unsolicited electronic mail (e-mail) advertisements (ads) to
contact the sender to remove his or her e-mail address from the
sender's mailing list, and prohibits the sending of unsolicited
e-mail ads from California or to a California e-mail address.
Specifically,  this bill  :

1)Authorizes a recipient, an e-mail service provider, or the

```
                                                         SB 186
                                                         Page  2
```

Attorney General (AG) to bring an action to recover actual

damages, and/or liquidated damages of $1,000 per unsolicited
commercial e-mail, up to $1 million per incident, as defined.
Provides for an award of reasonable attorney's fees and costs
to a prevailing plaintiff.

2) Provides that if the court finds that the defendant
establishes and implemented with due care, practices and
procedures reasonably designed to effectively prevent
unsolicited commercial e-mail advertisements, the court shall
reduce the liquidated damages to a maximum of $100 for each
unsolicited, or a maximum of $100,000 per incident.

3) Establishes that commercial e-mail ads sent pursuant to the
exemption provided for a "preexisting or current business
relationship" shall provide the recipient with the ability to
"opt-out" from receiving further commercial e-mail ads by
calling a toll-free telephone number or by sending an
"unsubscribe" e-mail to the sender of the commercial e-mail
ad.  This "opt-out" provision does not apply to recipients who
are receiving free e-mail service with regard to commercial
e-mail ads sent by the provider of the e-mail service.

4) Defines "preexisting or current business relationship," as
used in connection with the sending of a commercial e-mail ad,
to mean that the recipient has made an inquiry, and has
provided his or her e-mail address, or has made an
application, purchase, or transaction, with or without
consideration, regarding products or services offered by the
sender.

5) Establishes that it is unlawful for any person or entity to
advertise using a commercial e-mail ad either sent from
California or sent to a California e-mail address under any of
the following circumstances:

  a)   The commercial e-mail ad contains or is accompanied by a
    third party's domain name without the permission of the
    third party;

  b)   The commercial e-mail ad contains or is accompanied by
    falsified, misrepresented, obscured, or forged header
    information; and,

  c)   The commercial e-mail ad has a subject line that a

SB 186
Page   3

person knows would likely mislead a recipient, acting
reasonably under the circumstances, about a material fact
regarding the contents or subject matter of the message.

6) Prohibits any person or entity from collecting e-mail
addresses on the Internet for the purpose of using the
addresses to initiate or send unsolicited commercial e-mail.

7) Prohibits any person or entity from using an e-mail address
obtained by automated means based on a combination of names,

letters, or numbers, in order to initiate or send unsolicited
commercial e-mail.

8) Prohibits any person from using scripts or other automated
   means to register for multiple e-mail accounts in order to
   initiate or send unsolicited commercial e-mail.

9) Provides that the provisions of this bill shall not be
   construed to limit or restrict the adoption, implementation,
   or enforcement by a provider of Internet access service of a
   policy of declining to transmit, receive, route, relay,
   handle, or store certain types of electronic messages.

10) Provides that if an electronic mail service provider brings
    an action against a party for violation of the provider's
    policy prohibiting or restricting the use of its equipment
    related to unsolicited commercial e-mails (pursuant to
    Business and Professions Code Section 17538.45), that
    electronic mail service provider may not bring an additional
    action under the penalty provisions created by this bill
    (pursuant to Business and Professions Code Section 17529.8)
    for the same violation.  Conversely, if an action is brought
    under the penalty provisions of this bill, an additional
    action may not be brought under Business and Professions Code
    Section 17538.45 for the same violation.

11) Contains legislative intent language delineating the adverse
    consequences of e-mail spam.

12) Defines "e-mail service provider" to mean any person,
    including an Internet service provider, that is an
    intermediary in sending or receiving e-mail or that provides
    to end users of the electronic mail service the ability to
    send or receive e-mail.

13) Defines "initiate" to mean to transmit or cause to be
    transmitted a commercial e-mail ad, or assist in the
    transmission of a commercial e-mail ad by providing electronic
    mail addresses to which the ad may be sent, but does not
    include the routine transmission of the ad through the network
    or system of a telecommunications utility or an e-mail service
    provider through its network or system.

14) Defines "routine transmission" to mean the transmission,
    routing, relaying, handling, or storing of an electronic mail
    message through an automatic technical process.

15) Defines "incident" as a single transmission or delivery to a
    single recipient or to a multiple recipient of unsolicited
    commercial e-mail containing substantial similar content.

16) Defines "unsolicited commercial e-mail ad" as a commercial
    e-mail ad sent to a recipient who has not provided direct
    consent to receive the commercial e-mail ad and who does not

have a preexisting or current business relationship with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit.

17)Defines "direct consent" to mean that the recipient has expressly consented to receive e-mail ads from the advertiser either in response to a clear and conspicuous request for the consent or at the recipient's own initiative.

18)Defines "commercial e-mail ads" as any e-mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit.

19)Provides that the provisions of this bill are "severable" so that if any provision is held invalid, that invalidity shall not affect any other provision that can be given effect.

 EXISTING LAW  :

1)Prohibits unsolicited advertising by e-mail unless that e-mail contains either a toll free phone number or return e-mail address that the recipient can use to notify the sender not to electronically send any further unsolicited ads.

                                                    SB 186
                                                   Page  5
_____

2)Prohibits sending unsolicited e-mail ads to any recipient who has notified the sender to stop sending unsolicited e-mails.

3)Requires unsolicited e-mail ads to contain a heading of "ADV:" or "ADV:ADLT," as specified.

4)Prohibits the unauthorized use of e-mail networks to send unsolicited e-mail ads.

5)Authorizes any e-mail service provider whose policy on unsolicited e-mail ads is violated to bring a civil action to recover the actual monetary loss suffered by that provider by reason of that violation, or liquidated damages of $50 for each e-mail message initiated or delivered, up to a maximum of $25,000 per day, whichever amount is greater.

6)Makes it a crime to knowingly and without permission use the Internet domain name, as defined, of another individual, corporation, or entity in connection with the sending of one or more e-mail messages, and thereby damage or cause damage to a computer, computer system, or computer network.

 FISCAL EFFECT  :  Minor absorbable workload to the Department of Justice, as enforcement authority is discretionary.

 COMMENTS  :  According to the author, this bill is intended to address a problem well known to all e-mail users, the proliferation of unsolicited e-mail ads, or spam.  The author

states that this bill will create a cause of action for the consumer, the e-mail service provider, or the AG, to sue for violations of this bill's restrictions and prohibitions.  This bill permits the plaintiff to seek actual damages, and/or liquidated damages of $1,000 per ad, up to $1 million per incident, defined as a single transmission of substantially similar content.  Where a defendant could show that it implemented practices designed to effectively prevent unsolicited commercial e-mail advertisements, the liquidated damages available would be a maximum of $100 per advertisement or a maximum of $100,000 per incident. _

AB 1676  (Bowen), Chapter 865, Statutes of 1998, requires unsolicited commercial e-mail to contain an "ADV:" or "ADV:ADLT" label in the subject line of the message.  AB 1676 also requires the message to contain either a valid return e-mail address or a toll-free phone number recipients could use to remove themselves

from a spam mailing list.

AB 1629 (Miller), Chapter 863, Statutes of 1998, sought to protect Internet Service Providers from spam by allowing e-mail service providers to sue spammers for damages caused to e-mail networks and prohibiting unauthorized domain name use.  AB 1629 requires ISPs to provide "actual notice" to the spammer of the ISP's policy on unsolicited commercial e-mail and of the fact that sending the spam would use (or cause to be used) the ISP's equipment located in California.

AB 1769 (Leslie), Chapter 699, Statutes of 2002, subject to certain exceptions, prohibits a person or entity conducting business in California from transmitting a text message ad to a cellular telephone or pager equipped with short message capability or any similar capability allowing the transmission of text messages.

SB 771 (Figueroa), Chapter 695, Statutes of 2001, establishes a "do not call" list for residential and wireless telephone subscribers who do not want to receive telephone solicitations, and prohibits telephone solicitors from calling subscribers who are currently on the "do not call" list. _

_Analysis Prepared by_ :   Alejandro Esparza / B. & P. / (916) 319-3301

FN: 0003638

# EXHIBIT P

```
-----------------------------------------------------------
|SENATE RULES COMMITTEE            |            SB 186|
|Office of Senate Floor Analyses   |                  |
|1020 N Street, Suite 524          |                  |
|(916) 445-6614          Fax: (916)|                  |
|327-4478                          |                  |
-----------------------------------------------------------
```

                                    THIRD READING


          Bill No:  SB 186
          Author:   Murray (D)
          Amended:  5/22/03
          Vote:     21


           SENATE BUSINESS & PROFESSIONS COMMITTEE  :  6-0, 4/28/03
          AYES: Figueroa, Aanestad, Brulte, Cedillo, Machado, Murray

           SENATE APPROPRIATIONS COMMITTEE  :  Senate Rule 28.8


           SUBJECT  :    Electronic mail advertising

           SOURCE  :     Author


           DIGEST  :    This bill modifies the existing state law that
          authorizes unsolicited electronic mail (e-mail)
          advertisements (ads) provided the recipient can contact the
          sender to remove his/her address from the sender's mailing
          list and, instead, prohibits advertisers form using
          unsolicited commercial e-mail ads.

           Senate Floor Amendments  of 5/22/03 revise the bill's
          definition of "direct consent" and "preexisting or current
          business relationship," and make other technical changes.

           ANALYSIS  :

          This bill:

          1.Defines advertiser as a person or entity that advertises
            through the use of unsolicited commercial e-mail ads.
                                                      CONTINUED


                                                      SB 186
                                                      Page
          _____
          2

2. Defines California e-mail address as any of the following:

   A.   An e-mail address furnished by an e-mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state.

   B.   An e-mail address ordinarily accessed from a computer located in this state.

   C.   An e-mail address furnished to a resident of this state.

3. Defines commercial e-mail ad as any e-mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit.

4. Defines direct consent as that the recipient has expressly consented to receive the message, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative.

5. Defines preexisting or current business relationship as either of the following:

   A.   That within the three-year period ending upon receipt of the advertisement, the recipient has made an inquiry application, purchase, or transaction regarding products or services offered by the sender.

   B.   That the recipient has made an inquiry, application, purchase, or transaction regarding products or services offered by the sender and the sender maintains an electronic or written record of the transaction.

6. Defines unsolicited e-mail ad as a commercial e-mail ad sent to a recipient who meets both of the following criteria:

SB 186
Page

_____
      3

   A.   Has not provided direct consent to receive the commercial e-mail ad.

   B.   Does not have a preexisting or current business relationship with the advertiser of the realty, goods, services, or extension of credit.

7. Provides that if an advertiser is located in California, the advertiser shall not advertise using an unsolicited commercial e-mail ad.

8. Provides that an advertiser that is not located in California shall not advertise using an unsolicited commercial e-mail ad that is sent to a California e-mail address if the advertiser knows or should reasonably foresee that the e-mail address is a California e-mail address.

9. Provides that a recipient of an unsolicited commercial e-mail ad transmitted illegally may bring an action to recover $1,000 for each individual violation.

10. Provides that the Attorney General may bring an action against an advertiser that uses an unsolicited commercial e-mail ad to recover $1,000 for each individual violation.

11. Provides that the laws that authorize unsolicited e-mail ads provided the recipient can contact the sender to remove his/her address from the sender's mailing list do not apply to advertisers.

12. Provides that a cause of action that is in existence before the effective date of this act shall not be affected by this act, but shall instead be governed by the law that was in effect at the time the cause of action arose.

<u>Comments</u>

_____ According to information provided by the author's office, the real problem (with unsolicited e-mail ads) lies with the actual businesses whose products are advertised through

SB 186
Page

_____ 4

these e-mails. Those companies are just as much responsible if not more for these e-mails and need be to be held accountable. They are profiting at the expense of the consumer.

<u>Similar Legislation</u>

_____ <u>SB 12 (Bowen), 2003-04 Session</u>. Modifies the existing state law that authorizes unsolicited e-mail ads provided the recipient can contact the sender to remove his/her address from the sender's mailing list and, instead, broadly prohibits the sending of unsolicited e-mail ads from California or to a California e-mail address.

<u>Related Legislation</u>

_____ <u>SB 342 (Florez) - 2003-04 Session</u>. Provides that persons conducting business in California are prohibited from sending unsolicited e-mail ads unless the ad contains a statement that includes the sender's identity, postal address, and e-mail address or telephone number. This bill

also allows the recipient of an unsolicited e-mailed ad to
notify the sender of the ad not to e-mail any further
unsolicited advertising material to the e-mail address or
addresses specified by the recipient.

 AB 567 (Simitian) - 2003-04 Session  .  Specifically
authorizes ISP recipients of prohibited ads to bring an
action for the recovery of actual damages or one thousand
dollars ($1,000), whichever is greater, for each violation.


 FISCAL EFFECT  :    Appropriation:  No   Fiscal Com.:  Yes
Local:  Yes

CP:cm  5/23/03    Senate Floor Analyses

                 SUPPORT/OPPOSITION:  NONE RECEIVED

                 ****  END  ****